Luis O. MENDOZA, M.D., Appellant,

v.

Jose Gabriel CANIZALES, a/k/a
"Gaby" Canizales, Appellee.

No. 04–83–00430–CV.

Court of Appeals of Texas,
San Antonio.

June 26, 1985.

Oscar J. Pena, Sr., Laredo, for appellant.

Julio Garcia, Dist. Atty., Sergio Martinez, Laredo, for appellee.

Before ESQUIVEL, TIJERINA and DIAL, JJ.

DIAL, Justice.

This is an appeal from the trial court's order granting a temporary injunction against the appellant Luis O. Mendoza.

The plaintiff-appellee, Jose Gabriel Canizales, a/k/a "Gaby" Canizales, is the United States Boxing Association's bantam weight champion. The defendant-appellant, Luis O. Mendoza, is a licensed medical doctor and long-time manager of appellee Canizales. Canizales and Mendoza have maintained a unique relationship over the years wherein Mendoza managed Canizales in his amateur years of boxing without a written contract. After Canizales had participated in several boxing matches as a professional, the parties entered into a five year contract which gave Mendoza the sole and exclusive right to manage Canizales and arrange his competitive boxing schedule. Mendoza, in return for Canizales's promise to fight, agreed to use his best efforts to secure remunerative boxing contests for Canizales. The contract granted Mendoza thirty-three and one-third percent (33⅓%) of the money earned by Canizales pursuant to the contract and required Men-

doza to render a full accounting to Canizales every ninety days. The parties agreed to comply with the rules and regulations of the Texas Department of Labor and Standards (TDLS). They further agreed to resolve any controversies pursuant to the contract by submitting their claims to the TDLS for arbitration. Lastly, the contract specified that unless it was signed in the presence of a TDLS representative, it would be invalid.

Canizales's request for injunctive relief arose from what he contended to be an invalid execution of the contract and material breaches of the contract.

The trial court granted an ex parte temporary restraining order against Mendoza on July 14, 1983. Mendoza subsequently filed his answer which included a general denial, allegations of Canizales' breach, recitations that the contract complied with TDLS regulations, and the defensive issues of ratification and waiver. Mendoza also independently set up a jurisdictional plea alleging that a complaint letter sent by Canizales to the TDLS prior to the filing of this suit displaced the jurisdiction of the district court by virtue of the arbitration clause in the contract. This plea was overruled. Mendoza also specifically excepted to the adequacy of Canizales's pleadings with regard to the injunctive relief sought.

The temporary restraining order was subsequently extended to August 4, 1983. An order entered September 1, 1983, converted the temporary restraining order into a temporary injunction. On September 15, 1983, the previously entered temporary injunction was modified and extended by the trial court pursuant to plaintiff's request and a hearing on the matter.

The final order recited that Mendoza should be enjoined and restrained from: attempting to enforce the contract in question, negotiating the sale of or selling the contract, interfering with Canizales's training, preventing Canizales from engaging his own trainers, preventing Canizales from engaging in remunerative boxing matches regardless of who procured the match, and from doing any act calculated to embarrass, harass, or molest Canizales or his boxing reputation.

■■■ In point of error three, Mendoza contends that Canizales' pleadings were inadequate to support the judgment. The petition in a suit for injunction must "state all material and essential elements entitling the petitioner to relief and negative every reasonable inference arising upon the facts so stated, that the petitioner under other supposable facts might not be entitled to relief." *City Council of City of Fort Worth v. Fort Worth Associated Master Plumbers & Heating Contractors*, 8 S.W.2d 730, 735 (Tex.Civ.App.—Fort Worth 1928, writ ref'd). Allegations of fact should be direct, certain and particular and leave nothing to inference. The petition should contain specific fact allegations showing a right in the pleader, the wrong done by the defendant, and the resulting injury. *Texas State Board of Registration for Professional Engineers, v. Dalton, Hinds & O'Brien Engineering Co.*, 382 S.W.2d 130, 135 (Tex.Civ.App.—Corpus Christi 1964, no writ).

■■■ The petition in question clearly sets out the unique manager-boxer relationship between Mendoza and Canizales. It further recites the importance of Canizales receiving the proper training and supervision necessary to maintain his professional status. It further alleges that Mendoza, in dereliction of his managerial duty and in violation of their contract, has prevented Canizales from participating in remunerative boxing contests and has failed to provide the training and supervision necessary to further his career. The petition also states that Mendoza's conduct has harmed Canizales, that such damages are largely intangible, that he is without an adequate remedy at law, and that the harm will likely continue without intervention by the court.

Although we are mindful of the strenuous pleading requirements necessary to support injunctive relief, we must also consider the special relationship between the parties as presented in the pleadings.

More importantly, we must also take note of Canizales's unique status as a professional boxer and be mindful of the damage that potentially could befall his status without proper training and supervision.

We find the facts presented in Canizales's petition adequately set out the necessary requisites for injunctive relief. Point of error three is overruled.

■ In order to be entitled to injunctive relief, an applicant must establish irreparable injury, the lack of an adequate remedy at law, and the likelihood of prevailing on the merits. *Millwrights Local Union No. 2484 v. Rust Engineering Co.*, 433 S.W.2d 683, 685–86 (Tex.1968); *GATX Leasing Corp. v. DBM Drilling Corp.*, 657 S.W.2d 178, 180 (Tex.App.—San Antonio 1983, no writ).

Appellant in point of error one contends that the trial court abused its discretion in granting Canizales injunctive relief since Canizales failed to establish a likelihood of prevailing on the merits and irreparable injury.

Canizales, in his original petition, alleged that the contract between he and Mendoza was void since it was not executed in compliance with TDLS regulations and since it was fraudulently notarized. Alternatively, Canizales alleged that Mendoza, acting in his capacity as manager, had materially breached the contract.

The evidence presented by Canizales to establish that he would probably prevail on the merits included references to TDLS regulations and clause eight of the contract.

Section 61.58 of the TDLS regulations recites that contracts between boxers and managers shall be executed and notarized on standard forms of the TDLS. Clause eight of the contract in question stated that the agreement was not valid unless signed in the presence of a representative of TDLS.

Benito Cortina, a representative of TDLS, testified that section 61.58 was in effect at the time the contract was executed. He also affirmed that it required

notarization of the contract. With regard to the fulfilling of this requirement, Cortina stated that he could not recall a notary being present at the signing. The notary himself, Eduardo M. Cruz, testified that at the time he notarized the contract only Mendoza was present, and that Canizales's signature was already affixed to the contract. He could not recall if Cortina's signature was affixed to the document.

With regard to clause eight of the contract requiring a TDLS representative to be present at the signing, Cortina stated that Mendoza, Canizales, and himself were all present together in Laredo when he received the contract which had already been executed by Canizales and Mendoza. Cortina could not recall, however, if the contract had actually been signed in his presence. Cruz, the notary, testified unequivocally that no one except Mendoza was present when he notarized the contract which had already been signed by Canizales. This testimony is consistent with Canizales's own statements that when he signed the contract in his training gym around March 5, 1983, no one was present except his former trainer, Jose Cantu.

Canizales testified that he became aware of the execution inconsistencies when he requested a copy of the contract. He stated that he had signed the contract in question alone in his training gym on March 6, 1983. Upon examining it, he found the date to be March 10, 1983, and he also found that several other parties had signed the document including a notary. Upon seeking an explanation of the signature inconsistencies, Canizales testified that Mendoza retributively removed him from a previously arranged fight which would have netted Canizales $5,000.00. Subsequently, Canizales learned that if he did not defend his U.S.B.A. crown soon, the Boxing Association would strip it from him. Canizales testified that Mendoza had given him no warning of such a possibility. In general terms, Canizales further testified that Mendoza at this point was no longer giving him the supervision and training he needed to retain his professional status.

Mendoza rebutted the evidence presented by Canizales with regard to both improper execution of the contract and material breach. He also presented evidence as to waiver.

■ In reviewing an order granting a temporary injunction, the court of appeals should indulge in all legitimate inferences from the evidence in a light most favorable to the trial court's judgment. *David v. Bache Halsey Stewart Shields, Inc.,* 630 S.W.2d 754, 757 (Tex.App.—Houston [1st Dist.] 1982, no writ); *Diesel Injection Sales & Service, Inc. v. Renfro,* 619 S.W.2d 20, 21 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

■ Although the testimony was conflicting, there was considerable evidence that the contract had been signed and notarized by the parties at different times, in violation of TDLS regulations. There was also evidence that the handwritten date on the notarization had been forged by someone other than the notary before it was filed with TDLS. Likewise, the evidence that Mendoza had breached the contract with Canizales and that the breach might cause the loss of Canizales's title was clearly an irreparable injury for which Canizales would have had no adequate remedy at law.

■ In granting the temporary injunction, the trial court clearly relied heavily upon the possibility of Canizales losing his championship title. We feel Canizales established a probable right to relief. A trial court has great discretion in granting a temporary injunction, and its action should not be reversed unless an appellate court is convinced it represents a clear abuse of that discretion. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union,* 248 S.W.2d 460, 462 (Tex.1952). We are not so convinced. An appellate court may not substitute its judgment for that of the trial court. An abuse of discretion does not exist where the trial court bases its decision on conflicting evidence. *Davis,* 571 S.W.2d at 862.

Indulging in all reasonable inferences in favor of the judgment and considering the special circumstances of this case, we feel the trial court properly granted the injunctive relief. Point of error one is overruled.

In point of error two appellant urges that the trial court abused its discretion in rendering the judgment for injunctive relief before hearing all the evidence in the case.

The statement of facts compiled in the trial court during this preliminary hearing consisted of three volumes. Each party called six witnesses and was allowed ample time for cross-examination of opposing witnesses.

■ In determining whether Mendoza was afforded an adequate opportunity to be heard at the temporary injunction hearing, we again must indulge all legitimate inferences from the evidence in a light most favorable to the judgment. *Reading & Bates Construction Co. v. O'Donnell,* 627 S.W.2d 239, 244 (Tex.App. —Corpus Christi 1982, writ ref'd n.r.e.). Mendoza points to no specific instances of harm with regard to this point of error and we will assume none. Point of error two is overruled.

■ In point of error four, appellant contends that the trial court erred in entering a judgment in this case since jurisdiction, by way of the arbitration provision in the contract, rested properly in the Texas Department of Labor and Standards.

The arbitration clause in the management contract between Mendoza and Canizales stated that the parties agreed to resolve any controversies arising between them pursuant to the contract by arbitration. The arbitrator was to be the administrator of the Boxing and Wrestling Division of TDLS and the result of that arbitration was to be final and binding upon them.

The validity of common law arbitration agreements has been recognized in Texas for many years. *Carpenter v. North River Insurance Co.,* 436 S.W.2d 549, 553 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.); *Ferguson v. Ferguson,* 93 S.W.2d 513, 516 (Tex.Civ.App.—East-

land 1936, writ dism'd). Despite its validity, under traditional common law, courts have refused specific enforcement of agreements to arbitrate future disputes. *L.H. Lacy Co. v. City of Lubbock,* 559 S.W.2d 348, 352 (Tex.1977). Either party to an executory agreement providing for arbitration of future disputes has been allowed to revoke the agreement at any time before the arbitration proceeding resulted in an award. *Id.* at 352. The sole remedy for such revocation is a suit for damages for breach of contract. *Id.* at 352.

Canizales, by filing his original motion for injunctive relief in the district court of Webb County, unequivocally revoked his agreement to concede to arbitration. The trial court, consequently, had jurisdiction to hear the case. Point of error four is overruled.

The judgment of the trial court is affirmed.