## WYLIE INDEPENDENT SCHOOL DISTRICT, Appellant,

v.

## TMC FOUNDATIONS, INC., Appellee.

### No. 05–88–00429–CV.

Court of Appeals of Texas, Dallas.

March 21, 1989.

Rehearing Denied May 1, 1989.

---

Earl Luna, Steven M. Dow, Dallas, for appellant.

Stephen C. Rasch, Dallas, for appellee.

Before HOWELL, STEWART and THOMAS, JJ.

THOMAS, Justice.

Appellant, Wylie Independent School District (WISD), appeals from the denial of its application for temporary injunction to stay arbitration of a dispute arising under a contract between WISD and appellee, TMC Foundations, Inc. In four points of error, WISD contends that the court: (1) erred and abused its discretion in denying its application for a temporary injunction; (2) erred in concluding that TMC could obtain specific enforcement of the agreement to arbitrate; (3) erred in concluding that TMC had not waived its right to arbitration; and (4) erred in concluding that WISD would probably not prevail upon the trial in this cause. The decisive legal question is whether the executory agreement to arbitrate can be specifically enforced by TMC. If it were specifically enforceable, the denial was proper; if not, the injunction should have been granted. For the reasons stated below, we affirm the trial court's judgment.

## FACTUAL BACKGROUND

WISD entered into a construction contract with TMC for additions to and the renovation of two elementary schools. When a dispute developed regarding a claim for reimbursement of certain fees previously paid, TMC filed a Demand for Arbitration relying upon section 7.9 of the agreement which provides as follows:

7.9 ARBITRATION

7.9.1. All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof ... shall be decided by arbitration in accordance with the Construction Industry Arbitration rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.... The foregoing agreement to arbitrate and any other agreement to arbitrate with an additional person or persons duly consented to by the parties to the Owner–Contractor Agreement shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrator

shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

WISD attempted to revoke the agreement to arbitrate and sought to avoid arbitration by filing an action seeking declaratory relief and a temporary injunction to stay the arbitration proceedings.

## STANDARD OF REVIEW

The standard of review applicable to an appeal from the denial of a temporary injunction is "whether the trial court abused its discretion in refusing to grant the temporary relief." *Navarro Auto–Park, Inc. v. City of San Antonio*, 580 S.W.2d 339, 340 (Tex.1979). Where, as here, only a question of law is presented, appellate review is limited to determining whether the trial court properly applied the law to the undisputed facts. *Sonny Arnold, Inc. v. Sentry Sav. Ass'n.*, 615 S.W.2d 333 (Tex. Civ.App.—Amarillo 1981), *aff'd*, 633 S.W.2d 811 (Tex.1982).

## ENFORCEMENT OF ARBITRATION AGREEMENTS

■ There are two modes of creating specifically enforceable agreements to arbitrate future contractual disputes. The first is by complying with the provisions of a statute authorizing the power to compel arbitration; the second is by meeting the requirements of the common law. WISD and TMC agree that the applicable statute at the time of their contract was article 224–1 of the Texas Revised Civil Statutes.[1] Further, the parties agree that this contract does not contain the statutory notice requirement[2]. Because this contract does not comply with the statute and thus, is outside the scope of any statute compelling arbitration, our function is to judge the validity of the agreement "under such common law rules as may be relevant." *L.H.*

**1.** Tex.Rev.Civ.Stat.Ann. art. 224–1 (Vernon Supp.1987), *repealed by* Acts 1987, 70th Leg., ch. 817, § 1 (effective August 31, 1987).

**2.** The statute provided that an arbitration agreement would not be enforced unless the contract

*Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 352 (Tex.1977).

■ The last time the supreme court wrote to address whether a party to an executory agreement providing for arbitration of future disputes is allowed to revoke the agreement was in the *Lacy* opinion in 1977. It is without question that prior to the *Lacy* decision, the Texas common law rule was that either party could revoke the agreement to arbitrate at any time before the arbitration proceeding resulted in an award. Further, the only penalty for such revocation consisted of damages for breach of contract. *Lacy*, 559 S.W.2d at 352. In *Lacy*, the court was not required to overturn the common law rule because the City of Lubbock failed to make its withdrawal prior to the award being made. However, the court writing through Chief Justice Greenhill, took the opportunity to strongly criticize the traditional common law rule and pointed out that it had long since been abandoned in England by case law. The court further stated that an increasing number of American jurisdictions have rejected the rationale. In explaining that this common law rule no longer fits the needs of modern society, the court stated:

> The doctrine was evolved in an era when court congestion was not a major problem as it is today, and in modern times a policy encouraging agreements to arbitrate is preferable. In addition to alleviating some measure of the burden on the courts, arbitration in a commercial context is a valuable tool which provides business people, and all citizens, with greater flexibility, efficiency, and privacy. While it is unnecessary in this case to alter common law arbitration rules, *the policy of refusing specific enforcement to executory arbitration agreements is not justifiable when the case fits within the common mold.*

*Lacy*, 559 S.W.2d at 352 (emphasis added) (citation omitted). We find Chief Justice

containing the arbitration provision also contained a notice—in underlined capital letters or rubberstamped prominently, on the first page of the contract—that the agreement was subject to arbitration.

Greenhill's statements on behalf of the Texas Supreme Court to be persuasive and an indication of the direction to be taken in these matters.

In our case, the trial court based its conclusion that Texas common law allows specific enforcement of agreements to arbitrate future disputes upon *Olshan Demolishing Co. v. Angleton Indep. School Dist.,* 684 S.W.2d 179 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). In *Olshan,* the court held that a party to an agreement to arbitrate future disputes may obtain specific enforcement of that agreement despite attempted revocation of the arbitration agreement by the other party. The *Olshan* case concerned a dispute arising between a contractor and a school district with Olshan suing to compel arbitration between the parties based upon their agreement to arbitrate. Seizing upon the supreme court's language in *Lacy,* the Fourteenth District Court of Appeals stated:

> We find the reasoning of the *L.H. Lacy Co.* opinion to be sound. By enforcing these agreements to arbitrate, disputes will be resolved faster and more efficiently by arbitrators who have knowledge of the general conditions of the dispute. Encouraging arbitration will reduce some of the backlog in our trial courts.... We hold that a party to an agreement to arbitrate future disputes may obtain specific enforcement of that agreement despite the attempted revocation of the arbitration agreement by another to that agreement.

*Olshan,* 684 S.W.2d at 184.

When the school district sought a writ of error from the Texas Supreme Court, the application was refused with the notation "no reversible error." We recognize that the annotation "n.r.e." is dubious when one attempts to extract any authoritative value from it, particularly where the action of the appeals court is predicated on more than one ground. *See generally* Robertson & Paulsen, *Rethinking the Texas Writ of Error System,* 17 TEX.TECH L.REV. 1, 30–41 (1986). However, it is equally true that an "n.r.e." stamp is in every sense a decision on the merits of the appeal, and it can

have great influence upon whether a court of appeals decision is later cited as authority and followed.

In the *Olshan* case, the issue of specific enforcement of executory agreements to arbitrate was squarely before the supreme court and thus the court had the opportunity to reject the holding of the Fourteenth District Court of Appeals. The application for writ of error and the motions for rehearing specifically asserted that: "The court of appeals erred in failing to give effect to the undisputed revocation by the school district of the executory common law agreement to arbitrate involved in the case at bar, and instead purporting to alter the common law." Under these circumstances, it would appear that the denial of the application for writ of error is an indication of the court's approval of the holding and result in *Olshan.*

There has only been one published case since *Lacy* that cites the old common law rule with approval. *See Mendoza v. Canizales,* 695 S.W.2d 266 (Tex.App.—San Antonio 1985, no writ). In this dispute between a boxer and his manager, the appellate court was not confronted directly with whether a party may obtain specific performance of an agreement to arbitrate. The point before the Fourth District Court of Appeals was whether the trial court had jurisdiction to enter the temporary injunction because of the arbitration clause. In deciding that the trial court did have jurisdiction, the appellate court went on to say that the boxer had revoked his agreement to arbitrate and based upon common law such was allowed. *Mendoza,* 695 S.W.2d at 271. Interestingly, there is no mention of the *Olshan* decision.

The last published case to address the issue is *Wetzel v. Sullivan, King & Sabom, P.C.,* 745 S.W.2d 78 (Tex.App.—Houston [1st Dist.] 1988, no writ). In reversing a stay of arbitration proceedings and ordering the parties to proceed to arbitration under the agreement, the court stated:

> Even if a written agreement is not executed and no writing exists that satisfies the Texas General Arbitration Act, a

common law right to arbitration is enforceable if an appropriate agreement to submit to arbitration is shown.... Moreover, a party may specifically enforce an arbitration agreement despite the other party's attempted revocation. *Wetzel*, 745 S.W.2d at 81 (citations omitted).

## TREND TOWARD ALTERNATIVE DISPUTE RESOLUTION

To deny specific enforcement of agreements to arbitrate future disputes would be to ignore recent legislation and the present emphasis on alternative dispute resolution. The increasing volume of litigation has forced the judicial system to look for alternative means to dispose of mounting caseloads. Advocacy for alternate methods of dispute resolution has been the subject of state of the judiciary messages, at the federal and state levels, for at least ten years.

Indication of legislative recognition of the importance of developing alternative methods of resolving disputes began in the mid–1980s with the passage of the statute to provide the collection of fees in order to fund dispute resolution centers. Further, in 1987, the Texas Legislature enacted an Alternative Dispute Resolution Procedures Act which set forth the state's policy of encouraging peaceable resolution of disputes and the early settlement of pending litigation.[3] The implementation of this policy has been placed in the hands of the judiciary.

We also note that the legislature has repealed the requirement that a contract contain a notice that the agreement was subject to arbitration, thus simplifying the enforcement of arbitration agreements. *See* Act of June 18, 1987, ch. 817, § 2, 1987 Tex.Sess.Law Serv. 5670 (Vernon). In fact, if the contract at issue had been entered into after the effective date of the repeal of the notice requirement, undoubtedly the agreement would be specifically enforceable under the statute.

Based upon the rationale expressed by the Texas Supreme Court in *Lacy* and the legislative trend, we hold that an agreement to arbitrate future contractual disputes is specifically enforceable even in the face of one party's attempted revocation of that agreement prior to an arbitration award. *See Olshan*, 684 S.W.2d at 184; *see also Wetzel*, 745 S.W.2d at 81. We do not see specifically enforcing this agreement to arbitrate as being a replacement of the role of the judiciary. Rather, we consider specifically enforcing these contract provisions to be complementary of the judicial system. With the policy of this state being to provide for a speedy resolution of disputes, it would be inconsistent to allow one party to revoke his agreement and deny specific performance. By the clear language of this contract, both parties agreed to submit their disputes to arbitrators and they should be bound by that decision. Accordingly, we affirm the trial court's judgment.

HOWELL, J., dissents.

HOWELL, Justice, dissenting.

I dissent. This intermediate Court is neither the Supreme Court nor is it the Legislature. It is not our province to throw out the common law rule that has served our state and nation from the beginning.

The discussion by the majority of alternative dispute resolution (ADR) is misplaced. ADR involves efforts to divert *existing disputes* from the judicial system. Those efforts should continue unabated. The movement in favor of ADR has no connection whatever with the question whether this State should, either by judicial fiat or by legislative action, abandon the common law rule to the effect that agreements executed before a dispute arises, which call for arbitration, cannot be specifically enforced.

Contractual provisions for arbitration would not be subject to criticism nearly as much if the bargaining power of all contract parties were equal, or if we could devise a system where arbitration agreements would only be enforceable if it is shown that the bargaining power of the parties was, in fact, equal.

Unfortunately, the trend continues toward the insertion of arbitration provisions

**3.** TEX.CIV.PRAC. & REM.CODE ANN. § 154.001 et seq. (Vernon 1986).

into insurance policies, employment agreements (or worse yet, the back sides of employment applications), contracts for the sale of homes, autos and other consumer goods, finance contracts, real estate listing contracts, stock brokers' "New Account Agreement[s]," bank signature cards, mortgages, and numerous other "contracts of adhesion." Inevitably, the decision of our majority will do nothing but accelerate the proliferation.

It is to be emphasized that the common law rule has never limited arbitration between consenting parties. If the consumer desires to abide by an arbitration provision found in fine print on the back side of his auto dealer's "New Car Order Form," he certainly may do so. Likewise, if a building contractor is charged with botching up the remodeling of the consumer's home, and the consumer is thereafter persuaded to arbitrate the dispute in order to hold down expense and materially shorten the time necessary to conclude the matter, the common law rule is no bar to the enforcement of a post-dispute arbitration agreement once made. The real problem lies in defining the conditions under which a customer will be held to an arbitration clause inserted into the boilerplate language of some vendor's printed form.

This opinion is written completely without citation of authority in order to illustrate that the question before us is purely one of public policy. Our system demands that this policy question be decided in the halls of the Legislature. In this writer's view, parties who insert arbitration provisions into contracts *before any dispute* has arisen should be burdened to secure from the opposing party, *after the dispute has arisen,* a ratification of the arbitration agreement. Thereafter, and only after ratification has been effected, in harmony with the movement in favor of alternate dispute resolution, should the agreement be specifically enforced.

I dissent. The injunction should be granted.