GOLDOME CREDIT CORPORATION,
Appellant,

v.

UNIVERSITY SQUARE APARTMENTS,
a Texas General Partnership,
Appellee.

No. 07–91–0272–CV.

Court of Appeals of Texas,
Amarillo.

March 30, 1992.

Hoover Bax & Shearer, David W. Waddell, Nathan A. Steadman, Houston, for appellant.

Law Offices of Jack McClendon, Greg Teeter, Jack McClendon, Lubbock, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

POFF, Justice.

University Square Apartments (University Square), appellee, sued to enjoin First National Bank at Lubbock (the Bank) from honoring a $150,000 letter of credit. The letter of credit was issued to Goldome Credit Corporation (GCC), appellant, and drawn against University Square's account. The trial court issued a temporary restraining order prohibiting the Bank from paying GCC under the letter of credit. GCC intervened and moved to dissolve the temporary restraining order. After a hearing, the court denied GCC's motion. After another hearing, the court issued a temporary injunction enjoining the Bank from honoring the letter of credit.

GCC appeals from the order granting the

temporary injunction.[1] In two points of error, GCC contends that the trial court abused its discretion in granting the temporary injunction because: (1) University Square did not meet its burden of proof for general injunctive relief; and (2) University Square did not meet its special burden of proof for injunctive relief in a proceeding dealing with a letter of credit. We will overrule both points of error and affirm the order of the trial court.

On September 3, 1985, the Bank issued a letter of credit to GCC which authorized GCC to draw $150,000 against University Square's account.[2] The letter of credit was originally due to expire on September 15, 1986. Annual amendments extended the expiration date to September 15, 1991.[3]

On September 11, GCC's attorney, David Waddell, presented documentation to the Bank necessary for payment under the letter of credit, *viz:* (1) a letter dated September 3 from Ralph J. Foscolo, Jr., Secretary–Treasurer of GCC, stating that the letter of credit was due; and (2) a $150,000 negotiable sight draft dated September 3 and signed by Foscolo. Waddell also presented a third document to the Bank which instructed the Bank to pay the proceeds from the letter of credit to the client escrow fund of Waddell's law firm. James Turnbull, a Bank vice-president, told Waddell that although the documents complied on their face with the terms of the letter of credit, payment to the client escrow account would be an unauthorized assignment of proceeds. Turnbull told Waddell if the Bank did not receive a duly authorized assignment of proceeds by September 16, the proceeds would be paid directly to GCC at the address on the letter of credit. Waddell agreed to this arrangement. However, on September 16, before payment was made, University Square obtained a temporary restraining order enjoining the Bank from honoring the letter of credit. Two weeks later, the trial court granted the temporary injunction.

University Square sought a temporary restraining order and the eventual temporary injunction because it was concerned that GCC no longer existed. The trial court was persuaded that GCC's questionable existence warranted the issuance of a temporary injunction. In pertinent part, the order of the trial court stated:

> The Court having considered the pleadings, the evidence presented, and the argument of counsel, the Court find [sic] that there is actual doubt as to whether the beneficiary of the Letter of Credit in question (Intervenor herein) actually exists and/or whether it may act in the capacities which it assumes in this litigation and that payment of the said letter of credit to such an ambiguitas [sic] entity might result in double payment and/or mispayment to a non-existent, unauthorized, or defunct payee and the Court therefore finds that Plaintiff has no adequate remedy at law, and further it being of the opinion therefrom that the application of Plaintiff for temporary injunction should be granted;

> IT IS ACCORDINGLY THE ORDER OF THIS COURT that Plaintiff's application for Temporary Injunction be, and the same is hereby granted.

■ University Square presented substantial evidence that GCC does not exist. The record shows that on Monday, June 1, 1991, it was reported by the Associated Press that "[i]nsolvent Goldome was seized Friday [May 29] by the Federal Deposit Insurance Corp. and divided between two upstate New York competitors in the most expensive savings-bank collapse in the nation's history." The report went on to say that "[i]n a separate action, the Office of Thrift Supervision seized Goldome's Florida subsidiary, Goldome Savings Bank." No specific mention was made of GCC, which was a subsidiary of Goldome like Goldome Savings Bank.

---

**1.** The Bank is not a party to this appeal.

**2.** The letter of credit was issued in connection with a financial transaction between GCC and University Square. Payment was required under circumstances not now relevant to the instant appeal.

**3.** All subsequent dates refer to 1991.

The record reflects that on June 24, Judge John C. Akard of the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division, signed an order finding that GCC no longer existed.[4] Delbert McDougal, a general partner of University Square, testified that contemporaneously with the above-referenced Associated Press report, he was informed by Charles Myer, a Goldome senior vice-president, that neither Goldome nor GCC any longer existed.

On the other hand, GCC presented evidence that it did indeed exist. During the temporary injunction hearing, GCC introduced a certificate from the Delaware Secretary of State dated September 27th. The certificate declared that GCC "is duly incorporated under the laws of the State of Delaware and is in good standing and has a legal corporate existence so far as the records of this office show and is duly authorized to transact business."

We find the evidence before the trial court was sufficient to support the trial court's opinion that "there is actual doubt as to whether [GCC] actually exists." The fact, however, that GCC's existence is in doubt does not necessarily mean the issuance of the temporary injunction was proper.

■ Our review of an order granting a temporary injunction is strictly limited to a determination of whether the trial court abused its discretion in granting the injunction. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *Petty v. Winn Exploration Co., Inc.*, 816 S.W.2d 432, 433 (Tex.App.— San Antonio 1991, writ denied). The merits of the underlying action are not presented for appellate review. *Davis v. Huey*, 571 S.W.2d at 861; *Fairfield Financial Group v. Gawerc*, 814 S.W.2d 204, 207 (Tex.App.— Houston [1st Dist.] 1991, no writ). We may not substitute our judgment for that of the trial court. *Davis v. Huey*, 571 S.W.2d at 862. An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence. *Id.* We are to view the evidence in the manner most favorable to the trial court's decision. *Fairfield Financial Group v. Gawerc*, 814 S.W.2d at 208; *Metro. Life Ins. v. La Mansion Hotels*, 762 S.W.2d 646, 648 (Tex. App.—San Antonio 1988, writ dism'd w.o.j.).

The issue before us is whether the trial court abused its discretion in temporarily enjoining the Bank from honoring the letter of credit due to the uncertainty regarding GCC's existence. We will address GCC's second point of error first, for if an injunction would not lie against the Bank's honoring the letter of credit, then University Square's equitable entitlement to the injunction is irrelevant.

■ Upon issuing a letter of credit, a bank assumes a primary obligation independent of the underlying contract and agrees to honor the letter of credit upon presentation of the requisite documents. *Philipp Bros. v. Oil Country Specialists*, 787 S.W.2d 38, 40 (Tex.1990). As a general rule, a bank must honor the letter of credit "even if the goods or documents do not conform to the underlying contract between the [account party] and the beneficiary." *First City, Texas–Houston v. Gnat Robot*, 813 S.W.2d 230, 233 (Tex. App.—Houston [1st Dist.] 1991, no writ).

---

**4.** The relevant portion of Judge Akard's order reads:

> On April 5, 1991, this court approved an agreed order proposed by San Angelo Associates Limited Partnership (Debtor) and Goldome Credit Corporation (Goldome) providing for.... It is a matter of public knowledge, having been reported in the national press, that Goldome no longer exists. At hearing in this matter on June 4, 1991, the attorney for Goldome acknowledged that it no longer existed. He asserted that he represented the successors to Goldome but no motion for substitution of parties has been filed in this proceeding. In view of the fact that Goldome no longer exists, the Agreed Order should be set aside.

Judge Akard affirmed this order in a different order signed on September 3. It is worth noting that GCC's attorney who acknowledged that GCC no longer existed was David Waddell, counsel for GCC in the instant case. However, Waddell testified that at a subsequent hearing before Judge Akard in early September he told the judge that he had been mistaken when he represented that GCC no longer existed. There is no record of Judge Akard modifying his order.

In three situations, however, a bank is not bound to honor the letter of credit. Tex. Bus. & Com.Code Ann. § 5.114(b)(2) (Vernon Supp.1992). The first of these situations is where the beneficiary has committed fraud. The second situation is where one of the requisite documents is forged. The third situation is where there is some "other defect not apparent on the face of the documents." Similarly, in any of these situations, a trial court may enjoin a bank from honoring a letter of credit.

■ In this case, one of the requisite documents was a signed statement *by Goldome Credit Corporation* stating "[t]he amount of the accompanying draft drawn under this Letter of Credit is due under that certain contract between University Square Apartments and Goldome Credit Corporation." Such a statement, signed by Ralph J. Foscolo as Secretary and Treasurer of GCC, was presented to the Bank. On its face, the statement appeared to be a conforming document, but University Square alleged and presented evidence that the document was nonconforming because GCC did not exist at the time of presentment. The trial court, therefore, had sufficient evidence impeaching the veracity of Foscolo's representation that he signed the statement as a representative of an extant corporation. If the court found the statement to be untrue, the facts would give rise to the third situation under Tex.Bus. & Com.Code Ann. § 5.114(b)(2) (Vernon Supp. 1992). For the injunction to lie, the untrue statement or wrongful conduct of the beneficiary must have "so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served." *Philipp Bros. v. Oil Country Specialists*, 787 S.W.2d at 40. According to *Philipp Bros.*, such conduct constitutes fraud under section 5.114(b)(2).

In the present case, however, the untrue statement does not pertain to the performance of the underlying contractual duty. University Square is not challenging the underlying agreement or its obligation to pay GCC. Rather, the question is whether the party attempting to exercise the letter is really GCC or its authorized agent or successor. This inquiry becomes crucial for if the funds from the letter of credit were erroneously paid, the payment would not extinguish the underlying liability of University Square to GCC. University Square would thus be liable to both the Bank for payment and to GCC under the underlying agreement. While this may not be a case of a fraud, which destroys the underlying agreement, to have denied the injunction would have been to subject University Square to double payment on the debt. Just as fraud may vitiate the entire underlying transaction and preclude the legitimate purposes of the letter of credit, the specter of double payment destroys the legitimate purposes of the Bank's obligation to honor the letter. To require a party to pay a debt twice is no different from requiring a party to pay a debt they do not owe.

■ Even, arguendo, if the untrue statement had to constitute fraud, the temporary injunction was proper.[5] As noted, the Bank's honoring of the letter of credit, thereby paying an entity other than GCC, would have in our opinion operated as a fraud against University Square for University Square would be liable for the same debt twice. Such a situation would certainly constitute a fraud which has so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served. We find the trial court's act of temporarily enjoining the Bank from honoring the letter of credit was proper. GCC's second point of error is overruled, and we will next address point of error one, the propriety of general injunctive relief in this case.

In addressing GCC's first point of error, we must initially review the requirements for the granting of temporary injunctive relief. First, a temporary injunction can

---

**5.** We do not read *Philipp Bros. v. Oil Country Specialists*, 787 S.W.2d 38 (Tex.1990), to require a showing of fraud in the situation where there is some "other defect not apparent on the face of the document," which defect vitiates the entire underlying transaction.

only be granted to preserve the status quo. *Surko Enterprises v. Borg–Warner*, 782 S.W.2d 223, 224 (Tex.App.—Houston [1st Dist.] 1989, no writ); *DeNoie v. Board of Regents, Etc.*, 609 S.W.2d 601, 602 (Tex. Civ.App.—Austin 1980, no writ). Second, the plaintiff must demonstrate the threat of imminent harm if not for the injunction. *Frey v. DeCordova Bend Estates Owners Ass'n*, 632 S.W.2d 877, 881 (Tex.App.—Fort Worth 1982), *aff'd*, 647 S.W.2d 246 (Tex. 1983); *Thomas v. Hale County*, 531 S.W.2d 213, 214 (Tex.Civ.App.—Amarillo 1975, no writ). Third, the plaintiff must demonstrate that if the injunction issues, the benefit to the plaintiff will outweigh the harm to the defendant and the public. *Storey v. Central Hide & Rendering Co.*, 148 Tex. 509, 226 S.W.2d 615, 618–19 (1950); *Executive Tele–Communication Systems v. Buchbaum*, 669 S.W.2d 400, 402 (Tex.App.—Dallas 1984, no writ). Fourth, the plaintiff must demonstrate "the likelihood of prevailing on the merits." *Mendoza v. Canizales*, 695 S.W.2d 266, 269 (Tex.App.—San Antonio 1985, no writ). Fifth, the plaintiff must show that without an injunction, he would suffer irreparable injury or have no adequate remedy at law. *Maxwell Realty, Inc. v. Magee*, 608 S.W.2d 283, 285 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ).

▮ University Square meets the first requirement for a temporary injunction because the trial court's issuance of the injunction preserved the status quo. "Status quo" means "the last, actual, peaceable, noncontested status which preceded the pending controversy." *Transport Co. of Texas v. Robertson Transports*, 152 Tex. 551, 558, 261 S.W.2d 549, 553–54 (1953) (quoting *Hartley v. Brady*, 114 S.W.2d 406, 408 (Tex.Civ.App.—Amarillo 1938, no writ)). In the instant case, at the time of the injunction, University Square was obligated to GCC but not to the Bank. If, however, the Bank had been allowed to honor the letter of credit, University Square would be obligated to pay $150,000 to the Bank. If payment were erroneously made, University Square would also be obligated to GCC for $150,000. Thus, the

temporary injunction served to preserve the status quo.

▮ The second requirement is met for temporary injunctive relief because University Square would suffer imminent harm if not for the injunction. A temporary injunction should be denied where the evidence shows no intention on the part of a defendant to do the thing sought to be enjoined. *Luccous v. J. C. Kinley Company*, 376 S.W.2d 336, 341 (Tex.1964). Here, however, the evidence clearly shows that the defendant sought to engage in the act that University Square seeks to enjoin. The Bank is on record as "standing ready to honor its obligations under the letter of credit." If the Bank paid an entity other than GCC, University Square would be subject to double payment.

▮ University Square meets the third requirement for the issuance of temporary injunctive relief because the injunction has benefitted University Square more than it has harmed GCC and the public. By virtue of the temporary injunction, University Square has benefitted for it is still in possession of its $150,000. A final trial on the merits may well result in a determination that the Bank cannot honor the letter of credit. That being the case, the injunction would have also benefitted GCC or its successors for the money would not have been paid to a beneficiary other than GCC. University Square also is greatly benefitted by being allowed to retain the $150,000 as opposed to being forced to seek to recover the $150,000 in a judicial proceeding against a beneficiary other than GCC. The proceeding could result in University Square securing a worthless judgment. If, however, a final trial reveals that the letter of credit should be honored, GCC can receive the $150,000.

▮ University Square met the fourth requirement for a temporary injunction by demonstrating a likelihood it would prevail on the merits. As the applicant for the temporary injunction, University Square has "the burden of not only pleading facts which, if proved, would entitle it to a permanent injunction, but, also offering evidence tending to prove its probable right

thereto on final hearing." *Millwrights Loc. Union No. 2484 v. Rust Engineering Co.,* 433 S.W.2d 683, 686 (Tex.1968); *Hidden Valley Civic Club v. Brown,* 702 S.W.2d 665, 668 (Tex.App.—Houston [14th Dist.] 1985, no writ); *Mejerle v. Brookhollow Office Products,* 666 S.W.2d 192, 193 (Tex.App.—Dallas 1983, no writ). University Square's evidence need not show that it "will finally prevail in the litigation," but, at the very least, it must tend to support a right of recovery. *Camp v. Shannon,* 162 Tex. 515, 518, 348 S.W.2d 517, 519 (1961). As in most cases, the evidence in this case is in conflict. An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence and the evidence viewed most favorably reasonably supports its decision. *Davis v. Huey,* 571 S.W.2d 859 (Tex.1978); *Seaborg Jackson v. Beverly Hills Sav.,* 753 S.W.2d 242, 245 (Tex.App.—Dallas 1988, writ ref'd n.r.e.); *Executive Tele–Communication Systems v. Buchbaum,* 669 S.W.2d at 403. As noted in point of error number two, we find the evidence tends to support the conclusion that GCC has ceased to exist.

▪ University Square also meets the fifth requirement for if the injunction had not issued, University Square would have suffered irreparable injury. This is because no adequate remedy at law exists if the defendant is incapable of responding in damages. *Ballenger v. Ballenger,* 694 S.W.2d 72, 76 (Tex.App.—Corpus Christi 1985, no writ). If GCC does not exist, it can hardly respond in damages. While University Square would have a cause of action against the party that represented itself as GCC, the identity of that party is unknown. The unknown defendant might very well be incapable of responding in damages.

▪ We note our disagreement with GCC's suggestion that in the event the Bank allowed an entity other than GCC to draw upon the letter of credit, University Square would have a cause of action against the Bank for wrongful payment. Because GCC's demand complied with the terms and conditions of the letter of credit, the Bank was *obligated* to honor the letter

of credit. Tex.Bus. & Com.Code Ann. § 5.114(a) (Vernon 1968); *Dallas Bank & Trust v. Com. Develop. Corp.,* 686 S.W.2d 226, 231 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). While in a proper situation a trial court may enjoin the presentment of a letter of credit, an issuing bank "acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents." Tex.Bus. & Com.Code Ann. § 5.114(b)(2) (Vernon Supp.1992); *Dallas Bank & Trust v. Com. Develop. Corp.,* 686 S.W.2d at 231. A bank's good faith honor of the letter of credit will in no case subject it to liability to the account party. *Id.*

All five requirements for temporary injunctive relief having been met, the court properly granted the temporary injunction. GCC's first point of error is therefore overruled. Having overruled all points of error, the trial court's order is affirmed.