Donald LAWSON, Individually and d/b/a/ V.I.P. Home Inspections and Mark Guillerman, Appellants,

v.

Larry ARCHER and Wife, Susan Archer, Appellees.

In re Donald Lawson, Individually and d/b/a/ V.I.P. Home Inspections, and Mark Guillerman, Relators.

Nos. 14–07–00324–CV, 14–07–00429–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 31, 2008.

---

Kenneth C. Kaye, League City, Walter J. Kronzer, III, Houston, for Appellants.

Daniel C. Pappas, David W. Holman, Nicole Bernadette James, Houston, for Appellees in No. 14-07-00324-CV.

Alan N. Magenheim, David W. Holman, Nicole Bernadette James, Daniel C. Pappas, Gary M. Polland, Houston, for Appellees in No. 14-07-00429-CV.

Panel consists of Justices FOWLER, FROST, and SEYMORE.

## OPINION

WANDA McKEE FOWLER, Justice.

In this consolidated interlocutory appeal and petition for writ of mandamus, appellants/petitioners Donald Lawson, individually and d/b/a/ V.I.P. Home Inspections, and Mark Guillerman (collectively, "V.I.P.") challenge the trial court's order denying their motion to compel arbitration of the claim filed by appellees/real parties in interest, Larry and Susan Archer. We conclude we lack jurisdiction over the appeal and therefore dismiss it. We further conclude denial of the motion to compel arbitration is a clear abuse of discretion for which the remedy of appeal is not available and therefore conditionally grant the petition for writ of mandamus.

**Factual and Procedural Background**

In January 2005, the Archers purchased a house from Patricio Valdes and Gemma Joffrey–Valdes ("sellers"). Ironwood Homes, Inc., d/b/a Ironwood Custom Homes JV1, d/b/a Ironwood Custom Homes of Houston ("Ironwood") was the original builder.

Before purchasing the house, Mrs. Archer contracted with V.I.P. for a home inspection, and on December 1, 2004, the same day the inspection occurred, Mrs. Archer signed an Inspection Agreement (the "Agreement"). Guillerman, the inspector, signed for V.I.P. The fee for the inspection was $350.00, and, under the Agreement, V.I.P.'s liability and that of its agents for "for claims or damages, costs of defense and suit, attorney's fees, or expenses and payment arising out of, or in any way connected with, errors or omissions in the inspection or in the inspection report" was limited to the amount of the fee. To remove the liability limitation and receive "an inspection by a team of experts," the customer could opt to pay $5,500.00. Mrs. Archer checked the box indicating she did not want this option. The same section containing the liability limitation also provided "any suit brought against V.I.P. Inspections shall be done within 1 year of the time of inspection or be forever time barred." The Agreement was to be governed by Texas law.

A completely separate section, captioned "If We Have a Dispute," provided in its entirety:

Any matter concerning the interpretation of this document, the written inspection report, the underlying inspection or any claim based upon any of them, shall be resolved by agreement between the parties; or, failing such agreement, and before resorting to arbitration, the parties agree first to try in good faith to settle the dispute by mediation with a neutral mediator knowledgeable in and familiar with the home inspection profession, under the

Construction Mediation Rules of the Construction Arbitration Services. Thereafter, any remaining unresolved controversy or claim concerning the interpretation of the document, the written inspection report, the underlying inspection or any claim based upon any of them, shall be resolved by arbitration in accordance with the parties submitting the dispute shall, by mutual agreement, appoint three neutral arbitrators knowledgeable in, and familiar with, the home inspection profession. One of the arbitrators must be a current member in good standing of the American Society of Home Inspectors with a minimum of five years full-time experience as a professional home inspector. In addition, one arbitrator must be an officer of the Texas Association of Real Estate Inspectors and another arbitrator must be a member on the Texas Real Estate Commissions Inspector Committee. The arbitrators shall follow substantive rules of law. Judgement upon the award rendered by the arbitrators may be entered in any court having jurisdiction. The prevailing party shall recover all costs and expenses, including all attorney's fees and costs and all arbitration costs and fees from the other party. As to any dispute or controversy which, under the terms hereof is hereby made subject to arbitration, no suit at law or in equity based on dispute or controversy shall be instituted by either party hereto, other than to enforce the award of the arbitrators.

According to Mrs. Archer, Guillerman was rushed, and so he told her only the cost of the inspection and instructed her where to sign the Agreement. Mrs. Archer claimed Guillerman did not advise her of the terms or provisions in the Agreement, nor did he give her an opportunity to review the Agreement.

After the Archers closed on the house, they allegedly began experiencing problems with the home, so they contacted the builder, Ironwood. Ironwood chose a forensic engineer to inspect the Archers' home, and the forensic engineer found several architectural and functional problems. The Archers requested that Ironwood remedy the construction-related problems, but Ironwood refused.

On October 2, 2006, the Archers sued Ironwood, V.I.P., and the sellers. On November 2, 2006, V.I.P. filed both its original answer and a motion to abate or stay litigation and compel arbitration. In response, the Archers filed an opposition to the motion to abate or stay litigation and compel arbitration. The trial court subsequently denied V.I.P.'s motion, and V.I.P. filed a notice of appeal in the trial court and a petition for writ of mandamus in this court.

### Analysis of the Issues

In both the appeal and the petition for writ of mandamus, V.I.P. raises a single issue challenging the trial court's denial of its motion to abate or stay litigation and compel arbitration.[1] Before we decide this issue, however, we must decide whether, and by what procedural vehicle, we have jurisdiction to review the trial court's action.

#### 1. Appeal or Mandamus

■ When the Federal Arbitration Act (FAA) applies or when neither the TGAA nor the FAA applies, mandamus is the appropriate procedure. *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 866 (Tex.App.–Houston [14th Dist.] 2006, no pet.) (stating

---

**1.** V.I.P. frames its sole issue as follows: whether the trial court erred (appeal) or abused its discretion (petition) "in refusing to enforce the plain language of the parties' agreement that required arbitration before three neutral arbitrators."

mandamus appropriate for party seeking relief from denial of arbitration under the FAA); *In re Paris Packaging, Inc.*, 136 S.W.3d 723, 727 & n. 7 (Tex.App.–Texarkana 2004, orig. proceeding) (holding mandamus appropriate in situation in which neither TGAA nor FAA applied).

■ The TGAA does not apply to "an agreement for the acquisition by one or more individuals of property, services, money, or credit in which the total consideration to be furnished by the individual is not more than $50,000" unless "(1) the parties to the agreement agree in writing to arbitrate; and (2) the agreement is signed by each party and each party's attorney." TEX. CIV. PRAC. & REM.CODE § 171.002(a)(2), (b).[2] The Agreement in the present case set a fee of $350.00 for in the inspection service. No attorneys signed the Agreement. The TGAA therefore does not apply.

■ The FAA "extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach." *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex.2005) (per curiam). "Commerce, as defined in the FAA, 'means commerce among the several States....'" 9 U.S.C.A. § 1 (1999). When the arbitration agreement is silent regarding the application of the TGAA or the FAA, the question of whether the transaction affects interstate commerce, and thus whether the FAA governs, is one of fact. *In re Educ. Mgmt. Corp.*, 14 S.W.3d 418, 422 (Tex. App.–Houston [14th Dist.] 2000, orig. proceeding).

■ In the present case, the parties reside and do business in Texas. They executed the Agreement in Texas. The inspected property is in Texas. The Agreement provides, "This agreement shall be governed by the laws of the State of Texas." In short, the FAA does not apply, and neither party seriously argues it does.[3]

Thus, neither the TGAA nor the FAA applies. Mandamus is therefore the appropriate procedure by which we may review the trial court's denial of the motion to compel arbitration. *See In re Paris Packaging*, 136 S.W.3d at 727 & n. 7.[4] We dismiss the appeal.

### 2. Standard for Mandamus Relief

---

**2.** In *In re Nexion Health at Humble, Inc.*, the Texas Supreme Court held the FAA preempted the section 171.002 provision requiring signature of a party's counsel in personal injury cases. 173 S.W.3d 67, 69 (Tex.2005) (per curiam) (citing TEX. CIV. PRAC. & REM.CODE § 171.002(a)(3), (c)). As discussed below, unlike *In re Nexion Health*, the present case does not implicate the FAA.

**3.** On appeal, the Archers argue both the TGAA and the FAA apply. In the trial court, however, they relied only on the TGAA, and they do not provide this court with an argument regarding why the FAA applies.

**4.** In Texas, statutory arbitration is cumulative of the common law. *Pheng Invs., Inc. v. Rodriquez*, 196 S.W.3d 322, 329 (Tex.App.–Fort Worth 2006, no pet.); *see Carpenter v. North River Ins. Co.*, 436 S.W.2d 549, 553 (Tex.Civ.

App.–Houston [14th Dist.] 1969, writ ref'd n.r.e.) ("In the many other states having arbitration statutes similar to our 1965 statute, it is almost uniformly held that the statutory remedy is cumulative and that the common law remedy remains available to those who choose to use it."); *see also Wylie Indep. Sch. Dist. v. TMC Foundations, Inc.*, 770 S.W.2d 19, 22–23 (Tex.App.–Dallas 1989, writ dism'd) (referring to legislative enactments in course of determining enforceability of arbitration agreement not covered by statute). Both statutory and common law in Texas favor arbitration. *See Orangefield Indep. Sch. Dist. v. Callahan & Assocs.*, 93 S.W.3d 124, 127 n. 2 (Tex.App.–Beaumont 2001), *rev'd in part on other grounds*, 92 S.W.3d 841 (Tex.2002) (per curiam).

To be entitled to the requested mandamus relief, V.I.P. must show that the trial court's order is a clear abuse of discretion and that V.I.P. has no adequate remedy by appeal. *See In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex.2005) (per curiam). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *Id.* The relator has the burden to establish the trial court abused its discretion. *See id.* A trial court's wrongful refusal to compel a party's contractual right to arbitration warrants mandamus relief. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex.2004) (in context of case involving contractual waiver of jury trial, stating court has granted mandamus relief for trial court's wrongful refusal to compel arbitration).

### 3. Review of the Order Denying the Motion to Compel Arbitration

A party seeking to compel arbitration must establish (1) an arbitration agreement exists and (2) the asserted claims fall within the scope of that agreement. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001); *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 896–97 (Tex.App.–Houston [14th Dist.] 2006, orig. proceeding).[5] In the present case, the parties agree an arbitration agreement exists and the Archers' claims fall within the scope of that agreement. Under these circumstances, the burden shifted to the Archers to raise an affirmative defense to the arbitration. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam).

The Archers contend the arbitration portion ("the arbitration clause") of the Agreement is substantively unconscionable.[6] Unconscionability is a defense to an arbitration agreement. *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 792 (Tex.App.–Houston [14th Dist.] 2007, pet. denied); *see also Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d 835, 846 (Tex.App.–Houston [14th Dist.] 1996, writ denied) (holding unconscionability of a contract is an affirmative defense). The defense of substantive unconscionability must specifically relate to the arbitration portion of the contract, not the contract as a whole, if the defense is to defeat arbitration. *In re FirstMerit Bank*, 52 S.W.3d at 757. Defenses to the entire contract can be arbitrated. *Id.* Although "unconscionability" has no precise legal definition, the term generally describes an agreement that is unfair because of its overall one-sidedness or the gross one-sidedness of one of its terms. *Olshan Found. Repair Co. v. Ayala*, 180 S.W.3d 212, 215 (Tex.App.–San Antonio

---

5. The courts in these cases were considering arbitration agreements under the FAA. *See In re FirstMerit Bank*, 52 S.W.3d at 753; *In re Jim Walter Homes, Inc.*, 207 S.W.3d at 896–97. In the present case, we have determined the FAA does not apply to the Agreement. Nevertheless, even in considering agreements under the FAA, we apply general contract principles. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003). For this reason and because, as noted above, statutory arbitration is cumulative of the common law, we rely, in part, on principles from cases interpreting agreements under the TGAA and the FAA.

6. In the trial court, the Archers also argued fraud in the inducement. The Archers have not addressed this defense in their briefing in this court. Furthermore, there is no evidence that V.I.P. actually misrepresented the Agreement's terms, or that V.I.P. made any false material representations with regard to the arbitration clause itself. Accordingly, the fraudulent inducement defense does not present a basis for invalidating the arbitration clause. *See In re FirstMerit Bank.*, 52 S.W.3d at 758.

2005, pet. denied). "The test for substantive unconscionability is whether, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.' " *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex.2006) (quoting *In re First-Merit Bank,* 52 S.W.3d at 757).[7]

 We review the trial court's decision concerning the unconscionability of an arbitration agreement for an abuse of discretion. *Ayala,* 180 S.W.3d at 214; *see TMI,* 225 S.W.3d at 795 (holding trial court abused its discretion in concluding arbitration clause was procedurally unconscionable when homeowners produced no evidence supporting all the elements of their defense). In applying this standard, we defer to the trial court's factual determinations while reviewing its legal conclusions de novo. *Ayala,* 180 S.W.3d at 214. When the facts are undisputed, a trial court abuses its discretion by incorrectly analyzing the law or by misapplying the law to the undisputed facts. *Id.* (citing *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992)).

The Archers contend the arbitration clause was substantively unconscionable in four respects. First, the specified panel of arbitrators was not neutral. Second, the prevailing party is entitled to all costs and expenses of the arbitration. Third, damages are limited to the contract inspection fee. Finally, the statute of limitations period is shortened to one year after the inspection.

**Panel composition.** The arbitration clause is the only evidence the Archers produced to support their claim the panel will be biased. Under that clause, the parties are to agree mutually on "three neutral arbitrators," but the arbitrators must be "knowledgeable in, and familiar with, the home inspection profession." Additionally, the parties must select arbitrators belonging to specified professional organizations:

> One of the arbitrators must be a current member in good standing of the American Society of Home Inspectors with a minimum of five years full-time experience as a professional home inspector. In addition, one arbitrator must be an officer of the Texas Association of Real Estate Inspectors and another arbitrator must be a member on the Texas Real Estate Commissions Inspector Committee.

The Archers rely on cases in which courts have concluded that an arbitration clause was substantively unconscionable or unfair because one party controlled the composition of the list from which the arbitrators are drawn. *See, e.g., McMullen v. Meijer, Inc.,* 355 F.3d 485, 488, 493–94 (6th Cir.2004) (holding arbitrator selection provision unfair and unenforceable when provision granted employer unilateral control over pool of at least five arbitrators from which employer and employee would

---

7. In evaluating the validity of an arbitration provision, courts may consider both procedural and substantive unconscionability. *In re Halliburton Co.,* 80 S.W.3d 566, 572 (Tex. 2002). Although the Archers refer, in a footnote, to the alleged circumstances under which Mrs. Archer signed the Agreement, they did not argue procedural unconscionability in the trial court and do not argue it in this court. V.I.P. does not contend the Arch-

ers were required to prove both. At least one federal case indicates Texas law requires a party prove both in relation to a arbitration clause. *See Morrison v. Amway Corp.,* 49 F.Supp.2d 529, 534 (S.D.Tex.1998). Because we conclude the Archers have failed to prove substantive unconscionability, we need not reach the question of whether they needed to prove both.

then mutually select one); *Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 314 (6th Cir.2000) (stating arbitral forum fundamentally unfair when third-party arbitration services provider hired by employer-and arguably biased for that reason-had discretion to select pool of potential arbitrators); *Hooters of Am., Inc. v. Phillips,* 173 F.3d 933, 938–39 (4th Cir.1999) (observing arbitration rules provided mechanism crafted to ensure biased decisionmaker when employer selected one of three arbitrators and also created list from which employee's arbitrator and third arbitrator were to be selected).

V.I.P. contends these cases are distinguishable from this case. For the reasons discussed below, we agree.

First, V.I.P. did not create a list of a limited number of specific arbitrators from which the parties select a panel. Instead, it chose three organizations, none of which, on its face, is necessarily biased. The arbitration clause also provides that appointment of the arbitrators shall be by the parties' "mutual agreement," and that the arbitrators shall be "neutral."

Second, the Archers have the burden of proving bias. The Archers have presented no evidence of bias on the part of the arbitrators to whom they will submit the case.[8] We do not know who the specific arbitrators will be; and, like the United States Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.,* we "decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators." 500 U.S. 20, 30, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

The provision establishing the parameters of panel membership, in and of itself, does not render the arbitration provision substantively unconscionable.

**Costs and expenses of arbitration.** Under the arbitration provision, "[t]he prevailing party shall recover all costs and expenses, including all attorney's fees and costs and all arbitration costs and fees from the other party." The Archers contend this clause renders the arbitration agreement unconscionable because (1) the clause unfairly places the burden on the unsuccessful party, and (2) such costs will be excessive. V.I.P. observes (1) the Archers pay these costs and fees only if V.I.P. prevails and (2) the Archers have provided no evidence of what these costs and fees might be.

Regarding the Archers' first contention, we agree with V.I.P.'s implicit premise that it would be speculative, at this stage, to assume V.I.P. will be the prevailing party. Additionally, as discussed below, even if the Archers are ultimately responsible for the arbitration fees and costs, they have presented absolutely no evidence of what those fees and costs will be.

In support of their second contention, the Archers cite *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *In re First-Merit Bank,* 52 S.W.3d 749; and *Ayala,* 180 S.W.3d 212. Under both *Randolph* and *In re FirstMerit Bank,* to sustain a defense of unconscionability based on excessive cost, a party must provide specific evidence it will actually be charged excessive arbitration fees. *In re U.S. Home Corp.,* 236 S.W.3d 761, 764 (Tex.2007) (per curiam) (citing *Randolph,* 531 U.S. at 90–91, 121 S.Ct. 513; *In re FirstMerit Bank,*

---

**8.** This is not to say the Archers cannot later object to a selected arbitrator on the grounds non-disclosure of facts that might create a reasonable impression of the arbitrator's partiality. *See Burlington N. R.R. Co. v. TUCO, Inc.,* 960 S.W.2d 629, 636 (Tex.1997).

52 S.W.3d at 757). In *Ayala*, the appellees presented uncontroverted evidence of the total cost of arbitration, an invoice for their share of the cost, and testimony about the percentage of their annual incomes these costs represented. *Ayala*, 180 S.W.3d at 216.

■ But, the Archers have presented no evidence of the costs of arbitration. Thus, the record contains no evidence from which we may conclude that allocating the costs of arbitration renders the arbitration provision substantively unconscionable.

**Limitations on time to bring suit and on amount of recovery.** A section of the Agreement separate from the arbitration clause limits the Archers' time to bring suit against V.I.P. to within one year of the date of the inspection and limits their amount of recovery to the amount of the inspection fee ($350.00). The Archers contend that these limitations render the arbitration agreement substantively unconscionable. V.I.P. responds that these limitations relate to the contract as a whole, and not to the arbitration clause. *See In re FirstMerit Bank*, 52 S.W.3d at 757 (stating, to defeat arbitration, defense of substantive unconscionability must specifically relate to arbitration clause itself, not to contract as a whole).

In support of their contention that the limitations render the arbitration clause unconscionable, the Archers rely on *In re Luna*, 175 S.W.3d 315 (Tex.App.–Houston [1st Dist.] 2004, orig. proceeding [mand. pending]). Unlike this case, in *In re Luna*, the limitations on recovery and time to demand arbitration were contained within the arbitration agreement itself. *See id.* at 317 (referring to appellant's challenge to several provisions contained in the arbitration agreement). The Archers argue that making such a distinction is "playing semantics with the headings in the Inspection Agreement." We disagree.

In *Universal Computer Consulting Holding, Inc. v. Hillcrest Ford Lincoln–Mercury, Inc.*, this Court considered clauses limiting one party's remedies while allowing the other party to pursue all remedies. Nos. 14–04–00819–CV, 14–04–01103–CV, 2005 WL 2149508, at *5 (Tex.App.–Houston [14th Dist.] Sept. 8, 2005, no pet.) (mem. op.). We observed, "[T]hese clauses ... are contained throughout the contract and are not particular to the arbitration provisions. Accordingly, Hillcrest's complaint pertains to the contracts as a whole and is, thus, subject to arbitration." *Id.*

■ As in *Universal Computer Consulting*, the clauses of which the Archers complain are contained in other portions of the contract and are not particular to the arbitration provision. They concern the contract as a whole and do not render the arbitration clause substantively unconscionable.

The Archers presented no evidence to the trial court showing that the arbitration agreement is substantively unconscionable. We therefore hold the trial court clearly abused its discretion in denying V.I.P.'s motion to abate or stay litigation and compel arbitration. Accordingly, we sustain V.I.P.'s sole issue.

### Conclusion

We conditionally grant V.I.P.'s petition for writ of mandamus. We are confident the trial court will comply with our holding. Therefore, writ will issue only if the trial court does not grant V.I.P.'s motion to abate or stay litigation and compel arbitration. We dismiss the appeal for lack of jurisdiction.