**MILLER PAPER COMPANY, A Corporation, Barbara Miller, Individually and d/b/a Miller Paper Company, Mary Deane Clark, Duane H. Cudd, James C. Reams, Gregory D. Reams, Dale F. Schriber, Jr., Norman L. Burk, Richard M. Klotz, Jay E. Lile, Jeffery L. Pace, Sandra Smith, Foy R. Stone, Monica Wolden, Judy Jefferson, Marlene Grant and Liz Billington, Appellants,**

v.

**ROBERTS PAPER COMPANY, Appellee.**

No. 07–95–0030–CV.

Court of Appeals of Texas, Amarillo.

April 25, 1995.

Opinion Denying Rehearing June 30, 1995.

█

---

Gibson, Ochsner & Adkins, L.L.P., John Huffaker, Todd O. Lafferty, Amarillo, for appellants.

Law Offices of Nancy J. Stone, Nancy J. Stone, Garner, Lovell & Stein, P.C., Sam L. Stein, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and QUINN, JJ.

QUINN, Justice.

Through five points of error, the appellants, Miller Paper Company (Miller Paper), Barbara Miller, individually and d/b/a Miller Paper Company, Mary Deane Clark, Duane H. Cudd, James C. Reams, Gregory D. Reams, Dale F. Schriber, Jr., Norman L. Burk, Richard M. Klotz, Jay E. Lile, Jeffrey L. Pace, Sandra Smith, Foy R. Stone, Monica Wolden, Judy Jefferson, Marlene Grant, and Liz Billington ask whether the trial court abused its discretion in issuing a temporary injunction. The acts enjoined include prohibition against violating covenants not to compete executed with Roberts Paper Company (Roberts), uttering false statements about Roberts, using purportedly confidential information and trade secrets owned by Roberts, and filling orders of Roberts. We answer yes with regard to the covenants not to compete and no with regard to the remaining topics.

## FACTS

Appellants Barbara Miller, Mary Deane Clark, Duane Cudd, James Reams, Gregory Reams, Dale Schriber, Jr., Norman Burk, Richard Klotz, Jay Lile, Jeffrey Pace, Sandra Smith, Foy Stone, Monica Wolden, Judy Jefferson, Marlene Grant, and Liz Billington were employed by Roberts. The latter sold and distributed paper, janitorial and chemical products throughout Amarillo and the surrounding area. On December 23, 1994, Barbara Miller, Roberts' president, turned in her letter of resignation, effective December 31, 1994.

Upon arriving at work on December 30th, Richard Roberts, appellee's chairman of the board, suggested to Miller that she should leave. She obliged him. Soon thereafter, the other individual appellants followed. Having decided they no longer cared to work with Richard Roberts during a meeting also conducted on the 30th, they left and joined Miller in an attempt to create a competing business. By January 2, 1995, the ex-Roberts employees were doing business as Miller Paper. In so endeavoring, they distributed over 1,600 letters to their previous clientele. Among other things, those letters characterized the recipients as customers of Miller Paper.

Additionally, several appellants also began soliciting Roberts' customers. They offered the customers the option of ceasing business with their old employer and placing orders with Miller Paper. Some accepted the offer and cancelled previously existing orders. Others were confused due to representations that Roberts was no longer in business, lost the bulk of its staff, or was acquired by Miller Paper.

Inspite of the exodus, the appellee continued its operation. Effort to retain new staff began. Customers were contacted and deliveries attempted, though some deliveries were refused because of better prices offered by Miller Paper. Moreover, Roberts discovered that a number of orders placed before December 30th were gone; they had been retained by one of the appellants.

The pending suit was initiated on January 6, 1995. Roberts hoped to use the action as a vehicle to collect damage, enforce covenants not to compete, and enjoin other acts deemed unlawful. The court granted a restraining order and the temporary injunction from which this appeal was taken.

### STANDARD OF REVIEW

In reviewing the issuance of a preliminary injunction, we must decide whether the trial court correctly opted to preserve the status quo pending final hearing on the merits. *Transport Co. v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953) (holding that the sole question before the trial court is whether the status quo should be preserved); *Inex Indus., Inc. v. Alpar Resources, Inc.*, 717 S.W.2d 685, 687 (Tex. App.—Amarillo 1986, no writ) (stating the same). A number of well-defined rules guide our determination. First, only a clear abuse of discretion permits reversal or modification of the mandate. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993).

Second, whether such an abuse occurred depends upon whether the court acted with reference to applicable guiding principles and rules. *Sherrod v. Moore*, 819 S.W.2d 201, 202–03 (Tex.App.—Amarillo 1991, no writ). Injunctions issued arbitrarily, *Id.*; *Garth v. Staktek Corp.*, 876 S.W.2d 545, 548 (Tex.App.—Austin 1994), or founded upon a misinterpretation or misapplication of those guiding principles or the law constitute abused discretion. *Id.*; *2300, Inc. v. City of Arlington, Tex.*, 888 S.W.2d 123, 126 (Tex. App.—Fort Worth 1994, no writ).

Next, the foremost guiding principle to which we must adhere entails the existence of a probable right to the relief sought at trial and a probable injury during the interim. *Walling v. Metcalfe*, 863 S.W.2d at 57; *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968); *Transport Co. v. Robertson Transp. Inc.*, 261 S.W.2d at 552. The presence of both is a condition to issuance of the extraordinary relief. Moreover, one proves the first element by simply alleging a cause of action and presenting evidence which tends to sustain it. *Transport Co. v. Robertson Transp. Inc.*, 261 S.W.2d at 552. This does not require him to establish that he will ultimately prevail, however. *Id.*; *Walling v. Metcalfe*, 863 S.W.2d at 58. The second element is proven by tendering evidence of imminent harm, irreparable injury and inadequate legal remedy. *Inex Indus., Inc. v. Alpar Resources, Inc.*, 717 S.W.2d at 687–88. Incidentally, legal remedy is inadequate if, among other things, damages are difficult to calculate or their award may come too late. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir.1984), *cited in, Walling v. Metcalfe*, 863 S.W.2d at 58. Another guideline to be considered is that admonishing the court to forego attempt to resolve factual disputes. *Ballenger v. Bal-*

*lenger,* 668 S.W.2d 467, 469 (Tex.App.—Corpus Christi 1984, no writ). We must further recognize that an injunction is not improper merely because the evidence presented below conflicted; it need only reasonably support the movant's complaints. *Goldome Credit Corp. v. University Square Apartments,* 828 S.W.2d 505, 511 (Tex.App.—Amarillo 1992, no writ); *Seaborg Jackson Partners v. Beverly Hills Sav.,* 753 S.W.2d 242, 245 (Tex. App.—Dallas 1988, no writ). We are lastly compelled to draw all legitimate inferences from the evidence in a light most favorable to the trial court's decision. *2300, Inc. v. City of Arlington,* 888 S.W.2d at 126; *Bertotti v. C.E. Shepherd Co.,* 752 S.W.2d 648, 655 (Tex. App.—Houston [14th Dist.] 1988, no writ).

■ In sum, whether to grant an injunction is a matter of grave import. Yet, once issued, it receives the deference inherent in an abuse of discretion standard. We cannot vacate or modify it simply because we would have decided otherwise.

### POINTS OF ERROR ONE AND TWO

Through the first two points, appellants Clark, Burk, Klotz, Lile, Reams, and Schriber contend that the trial court abused its discretion in enjoining them from breaching an invalid covenant against competition. The covenants, which were part of the employment agreements they signed with Roberts, state as follows:

It is recognized by both Salesman and Company that the success of both the Company and Salesman are dependent upon strong personal relationships between Salesman and the customers of Company. Company shall endeavor to foster these relationships. Salesman and Company agree that those relationships constitute the goodwill of company and that those relationships developed by Salesman during his tenure with the Company are for the benefit of Company. The development and exclusive use of those relationships are a part of the consideration furnished by Salesman to Company hereunder and in exchange for which Company has agreed to make the payments herein set forth.

Salesman recognizes that the use of those relationships developed hereunder, and for which the consideration to be paid hereunder is exchanged, to the detriment of Company or its competitive position, would be unfair. Salesman therefore agrees that for a period of two (2) years from and after the termination of Salesman's employment with the Company, Salesman shall not, directly or indirectly, as sole proprietor, member of a partnership, stockholder, investor, officer or director of a corporation, or as an employee, agent, associate or consultant of any person, firm or corporation:

(a) Solicit or accept "business."

(i) from any customers or prospects of the Company who were solicited directly by Salesman or where Salesman supervised, directly or indirectly, in whole or in part, the solicitation activities related to such customer or prospects or

(ii) from any former customer of Company who was such within two (2) years prior to such termination and who was solicited directly by Salesman or where Salesman supervised, directly or indirectly, in whole or in part, the solicitation activities related to such former customer.

(b) Solicit any employee of the Company to terminate his employment with Company.

The term "business" as used in Subparagraph (a) shall mean the purchase or sale of a product line consisting in whole or in part of a product or products of the same type as were included in the product line of Company during Salesman's employment by the Company. The covenants set forth in Subparagraph (a) shall apply only in those geographic areas actually served by the Company during the time of Salesman's employment by the Company.

Though initially considered a covenant not to compete, Roberts now argues that the foregoing provision is actually a *diversion of trade* or *nonpiracy* clause. (Emphasis in original). As such, it continues, they do not restrict competition but simply prevent the contracting parties from using relationships and goodwill of Roberts ... to solicit the

relatively small number of Roberts ... customers ... [previously] solicited for the benefit of Roberts.... Thus, it concludes that the criteria applicable to a covenant not to compete is inapposite. We disagree.

### a. Invalidity as Covenant Not to Compete

■ Covenants not to compete are restraints of trade and disfavored in law. *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 832 (Tex.1991); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 660 (Tex.App.—Dallas 1992, no writ). Statute, nevertheless, permits their use if they meet certain criteria. First, they must be ancillary to or part of an otherwise enforceable agreement. *Tex. Bus. & Comm.Code Ann.* § 15.50 (Vernon Supp.1995); *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 644 (Tex.1994); *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d at 832–33. Second, any limitations as to time, geographic area, and scope of activity contained therein must be reasonable and no greater than that needed to protect the goodwill or other business interest[s] of the employer. *Tex.Bus. & Comm.Code Ann.* § 15.50; *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d at 660; *Peat, Marwick, Mitchell & Co. v. Sharp*, 585 S.W.2d 905, 908 (Tex.App.—Amarillo 1979, writ ref'd n.r.e.). In applying these criteria to the clause at bar, problems quickly arise. It is not ancillary to an enforceable agreement.

■ First, the employment relationships involved herein were at-will. As such, they could not form otherwise enforceable agreements to which the covenant could append. *Light v. Centel Cellular Co.*, 883 S.W.2d at 644–45; *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d at 832–33. Nor could the promises of Roberts to pay commission, to reconcile commissions and accounts, to record the sales and gross profits due each salesman, and to foster relationships between the customer and salesman form such agreements. Each was dependant upon a salesman's commencement and continuation of employment and, therefore, illusory. Being illusory they were also unenforceable at the time of contracting. *Light v. Centel Cellular Co.*, 883 S.W.2d at 645 n. 6, 646 n. 9.

■ Similarly, the appellants' agreement to relinquish all claim to goodwill was also deficient. Those promises were given in exchange for Roberts agreement to make the payments herein set forth. Yet, as determined above, the obligation to pay was dependent upon an interval on continued at-will employment and, thus, illusory. *Id.* So too was every other promise made by the employees. None were immediately enforceable because the duties arising therefrom were contingent upon some aspect of post-execution performance. *Id.* Given these circumstances, the provisions violated the first prong of § 15.50 and, therefore, were unenforceable as covenants not to compete.

### b. Covenants Not to Compete or Something Else

■ The question now becomes whether the clauses were covenants not to compete. Again, Roberts says they were not but were actually agreements to forego the piracy or diversion of goodwill and business relationships.

It is conceivable that an invalid covenant could include enforceable promises. For example, in *Zep Mfg. Co. v. Harthcock*, the court upheld a nondisclosure covenant even though it was part of an invalid noncompetition covenant. *Id.* at 661–62. It did so because the purposes of the two provisions differed. First, the noncompete agreement restrained trade while the other did not. *Id.* at 663. Second, the noncompete prevented the employee from utilizing the general knowledge, skill, and experience he acquired during employment, the other did not. *Id.* Lastly, while the promise not to compete infringed upon public policy, the one curtailing disclosure of confidential information did not. *Id.* Due to these differing purposes and effects, a covenant restricting competition may well be unenforceable where one pertaining to disclosure is not.

Yet, the purpose and effect of the clause at bar parallel those inherent in a noncompete agreement. Both prevent the employee from soliciting customers or business enjoyed by the employer. Both contain geographic and durational parameters. Both effectively re-

strict competition.[1] Moreover, both allegedly serve to protect goodwill. *See Tex.Bus. & Comm.Code Ann.* § 15.50 (directing that the restraint be no greater than that needed to protect goodwill).

Indeed, other than the moniker assigned it, nothing truly differentiates the promise at bar from a covenant not to compete. To paraphrase a literary master undoubtedly schooled in Plato, a rose is a rose; it does not loose its fragrance, or thorns, simply by changing its name. Ergo, by enjoining breach of the covenant the trial court abused its discretion. Points of error one and two are sustained.

## POINT OF ERROR THREE

In their next point, the appellants attack the prohibition against uttering false statements. They consider it an unconstitutional prior restraint. Whether it is or is not we do not decide since they did not preserve the question for review.

■■■ To preserve an issue for review, one must, among other things, inform the trial court of a specific complaint through timely motion, request or objection. *Tex. R.App.Proc.Ann.* 52(a); *McDuffie v. Blassingame,* 883 S.W.2d 329, 335 (Tex.App.—Amarillo 1994, writ denied). Additionally, complaints founded upon constitutional dictate may succumb to this rule just as most others. *Armstrong v. Randle,* 881 S.W.2d 53, 58 (Tex.App.—Texarkana 1994, writ denied); *City of San Antonio v. Schautteet,* 706 S.W.2d 103, 104–05 (Tex.1986). At bar, the appellants argue that they raised their constitutional challenge via their answer and responses to the application for temporary injunction. In perusing same, we find a passage stating that any temporary injunction . . . would violate [their] rights . . . under the Texas and United States Constitution. The averment, however, omitted reference to the particular constitutional right infringed. Because of that, it lacked specificity. *See Emery v. State,* 881 S.W.2d 702, 712 (Tex.Crim. App.1994) (stating that because the appellant did not specify what laws or constitutional provisions [were] implicated, he ha[d] not preserved his . . . claim). Additionally, the record fails to disclose that the complaint was brought to the court's attention. In spite of incorporating same into their general denial and response, we believe further effort was necessary. The appellants had previously represented to the court that they had no problem with that aspect of the relief sought. In view of this representation, the court should have been clearly informed of their change of mind. *See Traylor v. State,* 855 S.W.2d 25, 26 (Tex.App.—El Paso 1993, no pet.) (representing that a party did not object to the evidence resulted in waiver).

Therefore, we overrule point three.[2]

## POINT OF ERROR FOUR

In point of error four, the appellants argue that the trial court abused its discretion in prohibiting them from using the documents, records, files, and hard copy taken from Roberts. Allegedly, none were confidential information or trade secrets worthy of protection. We disagree.

■■■ Upon the formation of an employment relationship certain duties arise apart from any written contract. The one of import here forbids an employee from using confidential or proprietary information acquired during the relationship in a manner adverse to his employer. This obligation survives termination of employment. Furthermore, though it does not bar the former employee from using the general knowledge,

1. As illustrated in its live pleading, Roberts invokes the provision as one means of restricting the six ex-employees from doing business in direct competition with Plaintiff.

2. We note, parenthetically, that several witnesses testified to hearing appellant Duane Cudd and Richard Klotz make false statements about the appellee's personnel and operational status while soliciting business for Miller Paper. It is beyond dispute that Miller Paper was in privity with those two employees; this, therefore, authorized the court to enjoin Miller Paper. So authorized, the court was also permitted to extend the injunction to the employer's other employees. *See Tex.R.Civ.Proc.* 683 (stating that the binding effect of an injunction extends to the enjoined's officers, agents, servants and employees). Thus, the appellants' protestations about enjoining Miller Paper and its employees when only two acted inappropriately lack merit.

skill, and experience acquired during employment, it does prevent him from utilizing confidential information or trade secrets acquired during the course of employment. *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 551 (Tex.App.—Dallas 1993, no writ); *Executive Tele–Communication Sys., Inc. v. Buchbaum*, 669 S.W.2d 400, 403 (Tex. App.—Dallas 1984, no writ). Moreover, injunctive relief is an appropriate remedy to curtail violation of this duty. *Id.*

Next, under the umbrella of protected data are compilations of information which have a substantial element of secrecy and provide the employer with an opportunity for advantage over competitors. *Rugen v. Interactive Bus. Sys., Inc.* 864 S.W.2d at 552; *Luccous v. J.C. Kinley Co.*, 376 S.W.2d 336, 338 (Tex. 1964); *Hyde Corp. v. Huffines*, 158 Tex. 566, 314 S.W.2d 763, 776 (1958), *quoting Extrin Foods, Inc. v. Leighton*, 202 Misc. 592, 115 N.Y.S.2d 429 (1952) *but see SCM Corp. v. Triplett Co.*, 399 S.W.2d 583 (Tex.Civ.App.—San Antonio 1966, no writ) (indicating that information readily accessible through private investigation lacks the requisite secrecy.[3] Examples of such data include pricing information, customer lists, client information, customer preferences, buyer contacts, and market strategies. *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d at 552; *Murrco Agency, Inc. v. Ryan*, 800 S.W.2d 600, 604–605 & n.n. 5 & 6 (Tex.App.—Dallas 1990, no writ); *Bertotti v. C.E. Shepherd Co.*, 752

S.W.2d 648, 654–55 (Tex.App.—Houston [14th Dist.] 1988, no writ).

Roberts maintained a customer list and a document known as "the book." The former contained the customer's name, address, special billing information, delivery sites, information regarding the need for purchase orders, cash on delivery data, and phone numbers. It had been compiled over a 52 year period. The list was maintained in the company computer, and salesmen were not generally allowed access to the computer. Nevertheless, there were instances when the document would be distributed to sales personnel for update. It was so distributed shortly before the individual appellants ceased their employment with Roberts. Though some left it with the appellee, others retained possession.

The book also listed Roberts' customers and their addresses and phone numbers. Though available to salesmen, it too was an item that Roberts would have rather not disclosed to competitors. Other documents existed which were owned by Roberts but found in the possession of one or more of the appellants' post-termination. They included order pads, actual orders, computer lists with customer names, addresses, and buying preferences, product lists, and manufacturer catalogues.

Though not uniform in their comments, witnesses did testify about the importance

---

3. *SCM Corporation* and other cases which follow it, such as *Numed, Inc. v. McNutt*, 724 S.W.2d 432 (Tex.App.—Fort Worth 1987, no writ), misinterpret state precedent to the extent that they refuse to protect business data compiled by an employer but subject to discovery through independent investigation. They forget that the Supreme Court intended the injunctive relief accorded in situations such as that at bar to protect more than the secrecy of the data. It recognized the need to preserve the sanctity of the confidential relationship through which the information was obtained. *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 770 (1958). " 'Whether the plaintiffs have any valuable secret or not[,] the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied but the confidence cannot be ... the first thing to be made sure of is that the defendant shall not ... abuse the trust reposed in him ... If there is any disadvantage in the fact that he knew the ... secrets, he must take the burden with the good.' " *Id. quoting E.I. du Pont*

*de Nemours Powder Co. v. Masland*, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016 (1917). Thus, the protection may well be lost against someone who discovered the data through independent research. *Id.; Luccous v. J.C. Kinley Co.*, 376 S.W.2d 336, 338–39 (Tex.1964) (item already patented, and therefore, subject to public inspection before acquired and copied by defendant). Yet, that is not so against one who could have conducted his own investigation but rather abused a confidential relationship to " 'obtain the desired knowledge without himself paying the price in labor, money, or machines expended by the discoverer.' " *K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv., Inc.*, 158 Tex. 594, 314 S.W.2d 782, 788 (1958), *quoting, Smith v. Dravo Corp.*, 203 F.2d 369 (7th Cir.1953); *Bertotti v. C.E. Shepherd Co.*, 752 S.W.2d 648, 655 (Tex. App.—Houston [14th Dist.] 1988, no writ). Since *SCM Corporation, Numed,* and their progeny ignore these considerations, we choose not to follow them.

attached to the information compiled in the foregoing items. One stated that it would provide competitors tremendous advantage. With it, they could grow their company at [Roberts'] expense. Another mentioned, in reference to product cost, it was supposed to have been real secretive. Another commented that with the data, one could easily start a new company.

█ The status of the record dictates that the trial court was within its discretion to temporarily enjoin the appellants from using any of the documents, records, files, and ... hardcopy ... taken from ... Roberts.... Evidence, though conflicting, existed which reasonably supported an inference that the compilations gave Roberts an advantage over competitors and that the compilations were not within the public domain. Though some information contained therein may have been susceptible to discovery through independent investigation of public material, the record does not establish that the appellants so gathered it.

More importantly, in so enjoining the appellants, the court did not bar them from competing with Roberts. Indeed, the portion of the restraining order expressly preventing competition with it was omitted from the injunction. Thus, the appellants are free to compete but not with the materials developed by or on behalf of Roberts.

Given the evidence, we cannot say that the trial court abused its discretion. *Hyde Corp. v. Huffines*, supra; *K & G Tool & Serv. Co. v. G & G Fishing Tool Serv.*, supra; *Goldome Credit Corp. v. University Square Apartments*, supra; *Seaborg Jackson Partners v. Beverly Hills Sav.*, supra. Consequently, we overrule point of error four.

### POINT OF ERROR FIVE

In their last point, the appellees contend that the court erred in enjoining them from filling orders taken prior to January 1, 1995, because an adequate legal remedy exists. We disagree.

The record indicates that approximately fifty orders were placed with Roberts via appellant Cudd and withheld from his employer when he terminated. It further reveals that after leaving Roberts, Cudd began to resolicit the businesses who had given him those orders. While doing so, he admitted to extending them the option of replacing their Robert's order with one to Miller Paper.[4] Furthermore, in at least one case he succeeded. The damage caused by this and other conduct was allegedly beyond ready calculation.

There's no way we can assess the damage. I mean, what's gone on, what's going on trying to keep this operation going and back on its feet, and what we can expect in the future, it's—you know, we can kind of put our hands on what's happening to us now, but we have no way of assessing the damage that this is going to cause—it could take months.

Well, considering what's gone on and what's going on, like I said, as much as I hate to admit it, it could very probably be the demise of a 52–year–old family business.

█ Damage which cannot be easily calculated may constitute irreparable injury. *Roland Mach. Co. v. Dresser Indus., Inc.,* supra. So too may the demise of an existing business constitute such harm. *Id.* In either situation, legal remedy is inadequate. Thus, the court was free to credit the foregoing evidence and conclude that probable irreparable injury existed. Again, that the evidence may have been mixed on the point does not render the court's decision an abuse of discretion. Accordingly, point of error five is sustained.

Accordingly, those portions of the order granting temporary injunction and enjoining Burk, Clark, Klotz, Lile, Reams, and Schriber from engaging in any activity prohibited by paragraph 3 of their respective employment agreement is reversed and those portions of the writ of injunction enjoining compliance with the provision are dissolved. In

---

**4.** Whether such conduct amounted to tortious interference with contract or prospective contract went unaddressed by the appellants. They simply argued, for purposes of this point, that Roberts had an adequate legal remedy. Thus, we neither address it.

all other respects, the order granting temporary injunction is affirmed.

## ON MOTION FOR REHEARING

Before the court pends the motion of Roberts Paper Company (Roberts) for rehearing. Same is denied for the reasons which follow.

Roberts initially contends that the "court ignore[d] the fact that the trial court made no express findings of fact, nor were any requested." Furthermore, by not issuing such findings, "the trial court could have entered the temporary injunction against unfair competition because Appellants' use of the Roberts' ... customer relationships and goodwill constituted unfair competition even in the absence of a written agreement." It is mistaken.

 Given the absence of findings of fact and conclusions of law, the temporary injunction may indeed be affirmed "on any legal theory supported by the record." *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *accord, Allen v. Allen*, 717 S.W.2d 311, 313 (Tex.1986). This we did not ignore. Instead, we recognized that findings of fact and conclusions of law serve to inform the litigants, and reviewing court, of the grounds underlying the trial court's decision. The "Order for Issuance of Temporary Injunction" did just that.

On the second page of the document, the trial court found as fact that the appellants Klotz, Burk, Clark, Lile, Reams, and Schriber

> intend to solicit or accept, or already have solicited or accepted, business from former customers of Roberts ... who were such within two (2) years prior to the Defendants' termination of employment from Roberts ... and who were solicited directly by said Defendants or where said Defendants supervised, directly or indirectly, in whole or part, the solicitation activities related to such former customer.

Then it concluded, as a matter of law, that the aforementioned individuals should be "restrained and enjoined from engaging in any activity prohibited by *paragraph 3* of ... [their] employment agreement, a copy of which is attached hereto...." (Emphasis added). Reading these provisions together, as we must, reveals that the court sought to enforce the covenant not to compete included in the "Salesmen's Contracts" executed by Klotz, Reams, Burk, Clark, Lile and Schriber. If this were not true, and if the court were actually enforcing some common law precept of unfair competition, then it had no reason to tract the language of the contract in explaining the misconduct allegedly committed or to expressly refer to paragraph three, and then attach the agreements containing the paragraph, when specifying the prohibited acts. Because the trial court clearly disclosed, in writing, that it sought to enforce *the contract* in enjoining Klotz and the five others under paragraphs "b," "c," "d," "e," "f," and "g" of pages three and four of the Order, *Davis* and *Allen* are inapplicable.

 Next, and assuming the cause of action of unfair competition were available to support the injunction entered, the outcome remains the same. The cases cited by Roberts decry, as unfair competition, *use* of confidential information belonging to a prior employer. *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 551 (Tex.App.—Dallas 1993, no writ); *Johnston v. American Speedreading Academy, Inc.*, 526 S.W.2d 163, 166 (Tex. Civ.App.—Dallas 1975, no writ. Neither they nor the cause of action prohibit fair competition. Furthermore, the latter includes the ability to solicit customers of the ex-employer, absent an enforceable non-compete agreement or use of confidential information. *Crouch v. Swing Machinery Co. Inc.*, 468 S.W.2d 604, 606–607 (Tex.Civ. App.—San Antonio 1971, no writ). This is especially so when the identity of the customer is not confidential, such as when they can be obtained from a phone book or comparable avenue of public access. *Id.* at 605–606. That appears to be the situation at bar, at least according to the great weight of the evidence.

Yet, should the customer's identity be combined with other data, such as that found in Roberts' "book," then the resulting compilation, assuming it itself is not publically available, carries indicia of confidentiality worthy of injunctive protection. *Id.* at 607–607;

**604**

Zoecon Indus. v. American Stockman Tag Co., 713 F.2d 1174, 1179 (5th Cir.1983) (holding that while a customer list simply containing the names and addresses of a customer may not be a "trade secret" it may be made so if extraneous information is incorporated therein at "considerable expense"); *see* footnote three *infra.* Thus, to the extent that Roberts demanded a preliminary injunction, via the doctrine of unfair competition, forbidding the solicitation of its customers whose identity is publically available, the request exceeded the trial court's authority. To the extent that it demanded injunction halting the *use* of confidential information, such as its customer list, in soliciting those customers, it received, and still enjoys, the desired relief.

Accordingly, the motion for rehearing is denied.