NO. 07-01-0117-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 14, 2001

_____


THE VARIABLE ANNUITY LIFE INSURANCE COMPANY, APPELLANT

V.

MICHAEL J. MILLER, APPELLEE


_____

FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

NO. 49,285-B; HONORABLE JOHN B. BOARD, JUDGE

_____

Before BOYD, C.J., and QUINN and REAVIS, JJ.

In two issues, appellant, the Variable Annuity Life Insurance Company (VALIC),
challenges a temporary injunction granted in its lawsuit against appellee Michael J. Miller
(Miller) for injunctive and monetary relief for his alleged wrongful competition and use and
disclosure of VALIC's trade secrets and confidential and proprietary information. VALIC
claims that (1) the scope of the injunction is too narrow as a matter of law, and (2) the

exceptions to the injunction are too vague and contrary to the law and the facts. We affirm the order of the trial court.

VALIC sells and services fixed and variable tax-deferred annuities to clients who work for non-profit organizations such as colleges, public school systems, non-profit healthcare organizations, and governmental entities. Miller was a sales agent who worked for VALIC from April 15, 1991, until July 14, 2000, when he resigned to begin work for a competitor, PMG/Kemper. Miller has accepted business from at least 32 former VALIC clients since his resignation. It is the contention of VALIC that Miller wrongfully used information obtained from VALIC to solicit VALIC's clients and obtain their business on behalf of PMG/Kemper.

In the order on plaintiff's petition for temporary injunction signed on March 12, 2001, the court enjoined Miller as follows:

> (i). Mr. Miller is hereby enjoined and restrained, during the duration of this suit, from personally accessing, reviewing, using, or disclosing to any source, the trade secrets, confidential information, and proprietary information of VALIC, other than for the defense or prosecution of this suit. The terms "trade secrets," "confidential information," and "proprietary information" as used herein shall be defined in accordance with paragraph 4.3(b)(1) and (2) of the Agreement, subject to the terms of this Order;
>
> (ii). Miller shall immediately return to VALIC any original trade secrets, confidential information, and proprietary information in his or his counsel's possession. Copies of such trade secrets, confidential information, and proprietary information produced in discovery of this cause may be retained by Mr. Miller's counsel only for the purposes of the on-going litigation in this cause and shall not be disclosed to any source other than Plaintiff and the Court, unless otherwise ordered by the Court or upon agreed order.

2

The court further added two exceptions to the injunction as follows:

> b. This Order shall not prevent, restrain, or enjoin Mr. Miller from utilizing information about VALIC's current or former customers actually received from any other source, e.g., the customer, the customer's employer, faculty directories, the telephone book, Internet web sites or other information available to the general public or available to Mr. Miller as a result of his status or another company's status as an approved vendor or provider of retirement products to the State of Texas;

> c. This Order shall not prevent, restrain, or enjoin Mr. Miller from utilizing his general knowledge, skill and experience obtained during his relationship with VALIC or prior thereto regarding any current or former VALIC customer's identity, customer requirements and preferences, asset allocations, and account information.

VALIC argues that this order fails to adequately protect it and the injunction should have prevented Miller from soliciting or accepting any business from VALIC clients he formerly serviced during the pendency of the lawsuit.

VALIC relies on *Rugen v. Interactive Business Systems, Inc.,* 864 S.W.2d 548 (Tex.App.--Dallas 1993, no writ), in support of its argument. In that case, the court found that even though a non-competition agreement was void, Sharon Rugen, a former employee of Interactive Business Systems, Inc. (IBS), had confidential information of IBS which deserved protection. *Id.* at 550. The trial court had entered a temporary injunction prohibiting Rugen from calling on, soliciting, or transacting business with consultants retained by IBS or IBS customers until a final judgment was rendered. Rugen complained on appeal that the order was an abuse of discretion because it enjoined competition, the information was not a trade secret, there was no showing she would wrongfully use the

3

information, and the order did not describe in reasonable detail the acts to be enjoined. The court found no abuse of discretion because Rugen was not prevented from organizing a competing firm and developing her own clients, Rugen herself considered the identity of clients, prospective clients, potential projects, and pricing information to be confidential, Rugen had such information and it was probable she would use it to IBS's detriment, and the information contained in exhibits referred to in the injunction explicitly defined the prohibited conduct. *Id.* at 551-53.

In the case before us, the court declined to enter as broad an injunction as the court did in *Rugen* and included two exceptions to the prohibited use of certain materials. We must therefore determine if the record shows a clear abuse of discretion on the part of the trial court in doing so. In our review, we draw all legitimate inferences from the evidence in the light most favorable to the trial court's judgment. *Miller Paper Co. v. Roberts Paper Co.,* 901 S.W.2d 593, 598 (Tex.App.--Amarillo 1995, no writ); *Bertotti v. C. E. Shepherd Co., Inc.,* 752 S.W.2d 648, 651 (Tex.App.--Houston [14th Dist.] 1988, no writ). The trial court abuses its discretion when it misapplies the law to the facts or when the evidence does not reasonably support the findings of probable injury or probable recovery, which are necessary to the granting of a temporary injunction. *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex. 1975).

Under the common law, an employee may not use confidential or proprietary information acquired during the relationship adversely to his employer, and that obligation

4

survives the termination of employment. Thus, while a former employee may use the general knowledge, skill, and experience acquired during the employment relationship, he may not utilize confidential information or trade secrets acquired during the course of employment. *American Derringer Corp. v. Bond*, 924 S.W.2d 773, 777 (Tex.App.--Waco 1996, no writ); *Miller*, 901 S.W.2d at 600-01. Protected data includes compilations of information which have a substantial element of secrecy and provide the employer with an opportunity for advantage over competitors. *Id.* at 601; *Rugen*, 864 S.W.2d at 552. Examples can include pricing information, customer lists, client information, customer preferences, buyer contacts, and market strategies. *Id.* at 552; *Bertotti,* 752 S.W.2d at 644-45.

Even if certain business information is confidential, the same information may be capable of being obtained by observation, experimentation, inspection, analysis or general inquiry. *M. N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 632 (Tex.App.--Houston [14th Dist.] 1992, writ denied); *Jeter v. Associated Rack Corp.*, 607 S.W.2d 272, 275 (Tex.Civ.App.--Texarkana 1980, writ ref'd n.r.e), *cert. denied,* 454 U.S. 965, 102 S.Ct. 507, 70 L.Ed.2d 381 (1981). However, that information can still be protected if the competitor gains the information through a breach of confidence without the efforts of observation, experimentation, inspection, analysis or general inquiry. *Dannenbaum*, 840 S.W.2d at 632; *Jeter,* 607 S.W.2d at 275-76.

In its order, the court held that the covenant not to compete was an unreasonable restraint of trade and was unenforceable. The court did find, however, that VALIC had shown a probable right to recover on its common law claims for actual and probable use and/or disclosure of its trade secrets, confidential and proprietary information and probable injury from those actions.

The court also found as follows:

> Miller, after resigning from VALIC, maintained a laptop computer, software, forms, lists, and client information that he had promised to return and keep secret. Miller has returned some of this material, but may still have such information personally or in the possession of counsel. Miller personally accessed or reviewed at least some of this information and disclosed a client list to his new employer. If a temporary injunction is not granted based on these claims, VALIC will suffer imminent harm and irreparable injury and will have no adequate remedy at law because the threat is imminent that Miller will disclose VALIC's trade secrets, confidential information, and/or proprietary information.

A temporary injunction such as the one sought by VALIC, which would prohibit Miller from contacting any customers and clients of VALIC prior to final judgment, has been found not to be an abuse of discretion. *See Rugen*, 864 S.W.2d at 553; *Stocks v. Banner American Corp.,* 599 S.W.2d 665, 668 (Tex.Civ.App.--Texarkana 1980, no writ). However, that does not mean that a less restrictive injunction automatically constitutes an abuse of discretion. In *Johnston v. American Speedreading Academy, Inc.*, 526 S.W.2d 163 (Tex.Civ.App.--Dallas 1975, no writ), a provision in a temporary injunction prohibiting the defendants from "[c]ontacting, communicating or soliciting with any customer of Plaintiff

6

derived from any customer list, customer lead, mail, printed material or other information secured from Plaintiff or its present or past employees" was proper. *Id.* at 165-66. This injunction did not prohibit all contact with the complainant's customers, only that contact derived from information obtained from the complainant.

The testimony at the hearing on the temporary injunction showed that a number of companies, including VALIC, were authorized to participate in the optional retirement program offered by Amarillo College, West Texas A&M University (WTAMU), and other higher education institutions. Therefore, the representative of VALIC agreed that the potential pool of customers was not a trade secret. Miller had been both a student and a teacher at WTAMU and had taught seminars at Amarillo College prior to going to work for VALIC. He had also been a VALIC client. Miller testified he built up his initial business based on the individuals he knew and friendships he had prior to working for VALIC. After commencing work for VALIC, he built up his client base as a result of referrals from those individuals and from having contact with human resource directors at institutions of higher learning, who provided him with names of new faculty members whom he knew would probably be eligible for the retirement program. Information as to faculty members was available from a faculty directory, the internet, or the human resource department. That same information would also be available to competitors of VALIC. The length of time an individual had worked at a particular school and his title would indicate the relative size of his investments. Once an individual was contacted, he could provide information as to his particular investments. The evidence additionally indicated that Miller retained at least

7

some information as to the names of his former clients, the relative size of their accounts, the type of investments they made, and whether they were averse to risk or risk tolerant.

The parties agree that Miller should not have access to information generated from VALIC's software programs. It is the information contained in Miller's memory that is the real issue of contention between the parties. Miller asserts that this information is not protected because it is either part of his general knowledge or equally available to competitors of VALIC while VALIC claims the information is proprietary.

The court stated its intentions at a hearing to clarify the temporary injunction:

> Let me say with regard to my intentions to competing and contacting persons who he serviced during that previous year, it was my intent - - and I want to make it clear - - that I was not - - that he should not be prohibited from contacting those people. And that was my concern was that then there would be arguments well, you know, by contacting them, then you must have used confidential information. And that's why I tried to say there are numerous sources from which he could have got that information, you know, not - - not from the [sic] his association with VALIC. But I wasn't clear on what's in his head. And the problem with that, and I think one of the cases I looked at pointed that out - - I don't know how you would ever enforce that. To say that he can't use the information that's in his head. But I was trying to make clear that he shouldn't refer to any proprietary software, or things that have been downloaded from that. But as far as my reading of the Miller Paper case, is that those kind of things that are in your head. You can't make somebody download those things. And that seems to me just one of the risks you take when you hire people, is that they're going to obtain some knowledge.
>
> *   *   *
>
> But on the other hand, the fact that somebody may be risk averse is something he's going to know from years of service with them. And you can't make him stop knowing that. And as a practical matter, all you've got to do

8

when you sit down with somebody is say are you risk averse, and they are going to tell you yes I am, or no I'm not. So I - - I understand your concern there, and I was concerned about that, too. And I didn't want to, by my ruling, place Mr. Miller and VALIC in a position of having to come back and reargue that. So I would like the order to be specific about that. And it wasn't - - it certainly - - again, unless I hear something different, it was my intent that certainly he would be able to use any information that he has in his brain, just because I don't think there is any way to prevent it.

* * *

. . . [L]et's assume for a minute that Mr. Miller just came off the street and became a Kemper representative. He could easily go to any VALIC or any other representative, go to any other current VALIC client and say: What's your account balance? And: What's your risk aversion? And more than likely they would tell him. And so to somehow handicap him because of a prior relationship he had with VALIC seems to me to be patently unfair. And especially in light of the fact I have found the anti-competition clause is ineffective. My feeling about the proprietary information was mainly the computer software VALIC had developed, and it wouldn't be fair for him to give that to Kemper. But with respect to whether or not a client is - - is risk averse - - I mean, it could easily be said that VALIC wouldn't have had that client had it not been for Mr. Miller getting them for him in the first place. So to say he wouldn't have known that except for us, he could easily say you wouldn't have known it except for me. And to somehow say well, obviously if he contacts one of our customers, it's because of information we gave to him - - based on the evidence and testimony he knew those people from working - - a lot of them from working at the college . . . .

VALIC claims that, based on *Rugen,* the only type of injunction that will adequately protect it is the type of injunction entered by that court. However, in *Rugen*, it was stipulated by the parties that customer and pricing information, the identity of consultants and the pricing of those consultants was confidential information. *Rugen*, 864 S.W.2d at 552. In the case at bar, the parties hotly dispute, based on the particular facts of this case,

9

whether similar information is confidential. Moreover, the *Rugen* court did not specifically address the matter of information retained in the memory of a former employee.

In *Miller Paper,* employees of Roberts Paper Company, which sold and distributed paper, janitorial and chemical products, left the company to form a competing business and began soliciting Roberts's clients. We found the trial court was within its discretion to enjoin the use of any of the documents, records, files and hard copy taken by former employees of Roberts Paper Company, which those employees asserted was not confidential information. Those documents included a customer list and a document known as "the book," which contained customers' names, addresses, special billing information, delivery sites, information regarding the need for purchase orders, cash on delivery data, and phone numbers. *Miller Paper*, 901 S.W.2d at 597. The former employees were free to compete, but not with materials developed by or on behalf of Roberts. *Id.* There was no mention that the former employees had retained any of this information by memory.

VALIC argues that Miller is precluded by contract from providing the type of information excepted from the injunction. The contract between VALIC and Miller provides that Miller may not disclose trade secrets during or after termination of his contract. Trade secrets are defined as materials, processes, documentation, and knowledge embodied in 4SIGHT and other licensed software described in attached schedules, as well as customer identities and account information. Miller is also precluded by contract from disclosing

other confidential and proprietary information during the term of the contract and for two years thereafter.  Other confidential and proprietary information is defined as customer requirements, other VALIC software, and marketing plans whether maintained electronically or otherwise.   In the temporary injunction, the court tied the prohibited activity to these contractual provisions.  The exceptions under the temporary injunction are information about customers actually received from other sources or available to Miller as a result of his or his new employer's status as an approved vendor of retirement products to the State of Texas and general knowledge, skill, and experience obtained during his relationship with VALIC or prior to that relationship.  The court showed its intent to preclude the use or disclosure of written information, information downloaded from computers, or computer software, but not information retained by Miller or which was generally available to the general public or competitors of VALIC.  Thus, Miller is free to compete, but not with <u>materials</u> developed by or on behalf of VALIC.

It is argued by VALIC in reliance on *Dannenbaum* that Texas courts do not distinguish between written and memorized information. *See Dannenbaum*, 840 S.W.2d at 632.  In noting that the Restatement of Agency makes such a distinction, that court explicated that Texas courts either analyze the difficulty in obtaining the information and whether it is readily accessible by industry inquiry or focus on the method used to obtain the information. *Id.* at 632-33. The evidence in the record that much of Miller's client base was established through friendships and relationships existing prior to his employment with VALIC and through human resources personnel and directories available to other

11

competitors reasonably supports the trial court's decision in this regard. To issue the sort of injunction requested by VALIC would bar Miller from selling products even to former clients who initiate contact with him and whose needs and financial status may have changed since he last sold them any products. We find no abuse of discretion on the part of the trial court with respect to the temporary injunction.

Thus, VALIC's issues are overruled, and the judgment of the trial court is affirmed.


John T. Boyd
Chief Justice

Do not publish.

12