COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

NO. 2-06-088-CV



 

 

 

IN RE DESA HEATING, L.L.C.                                                   RELATOR

 

                                              ------------

 

                                    ORIGINAL
PROCEEDING

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

------------

Relator DESA
Heating, L.L.C. seeks mandamus relief from the trial court=s order compelling
it to produce information that it claims is protected by trade secret
privilege.  Because we hold that the
trial court abused its discretion by ordering production of DESA=s financial
information and market strategies, we conditionally grant DESA=s petition for
writ of mandamus as to this information only; in all other respects, we deny
the petition.

FACTUAL BACKGROUND








DESA, a
manufacturer and distributor of fireplace mantels, signed a contract in early
2003 with Lowe=s hardware stores agreeing to provide Lowe=s with a variety
of fireplace mantels.  DESA then placed
an order with real party in interest Heartland USA, L.L.C. for six million
dollars= worth of
fireplace mantels.  After their business
relationship soured, DESA and Heartland were named as co-defendants in a
lawsuit filed by KBK Financial, Inc., a company that provided financing to
Heartland.  DESA and Heartland then filed
cross-claims against each other in this suit; DESA alleges that Heartland
failed to produce the quality and quantity of mantels as promised, and
Heartland alleges that DESA wrongfully diverted its mantel business away from
Heartland and interfered with its business relationship with KBK Financial.








In the course of
this lawsuit, Heartland served discovery requests, including a request for
production of documents and a corporate representative deposition notice, on
DESA.  DESA claimed that five of
Heartland=s requests for production and
eight of Heartland=s deposition topics sought
information protected by trade secret privilege, and it tendered an affidavit of
Scott M. Nehm, its Vice President of Distribution and Logistics, in
support.  Heartland then filed a motion
to compel DESA to respond to its discovery requests.  In response, DESA argued that the requested
information was privileged but asked the trial court to enter a protective
order should it rule that Heartland was entitled to discover the information.  The visiting trial court judge granted
Heartland=s motion to compel and ordered DESA to
respond to the discovery requests, but it did not enter the protective order
requested by DESA.  DESA now seeks a writ
of mandamus from this court ordering the trial court to set aside its order
granting Heartland=s motion to compel.

DISCUSSION

When trade secret
privilege is asserted as the basis for resisting production, the party resisting
discovery must first establish that the information is a trade secret.  In re Cont=l Gen. Tire, Inc., 979 S.W.2d 609,
613 (Tex. 1998) (orig. proceeding).  The
burden then shifts to the requesting party to establish that the information is
necessary for a fair adjudication of its claims.  Id. 
If the requesting party meets this burden, the trial court should
ordinarily compel disclosure of the information, subject to an appropriate
protective order.  Id.  

Mandamus
will issue to correct a discovery order only if the order constitutes a clear
abuse of discretion and there is no adequate remedy by appeal.  In re Colonial Pipeline Co., 968
S.W.2d 938, 941 (Tex. 1998) (orig. proceeding); Walker v. Packer, 827
S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). 
The
trial court abuses its discretion if it orders production once trade secret
status is proven but the party seeking production has not shown a necessity for
the requested materials.  In re Bass,
113 S.W.3d 735, 738 (Tex. 2003) (orig. proceeding).

A.     Is
the requested information a trade secret?













A trade
secret is Aany formula, pattern, device or
compilation of information which is used in one=s
business and presents an opportunity to obtain an advantage over competitors
who do not know or use it.@  Computer Assocs. Intern., Inc. v. Altai,
Inc., 918 S.W.2d 453, 455 (Tex. 1994).[2]  DESA provided Nehm=s
affidavit to establish the applicability of this privilege to the information
sought by Heartland.  The discovery
requests seek information from four general categories: financial information,
market strategies, customers and vendors, and contract terms.[3]  The majority of Nehm=s
affidavit discusses how DESA keeps this information secret and how it is often
required to do so by terms of various contracts that it has with customers and
vendors, but secrecy is not the only requirement of trade secret status.  To prevail in its claim of privilege, DESA
also should show the value of the information to DESA and its competitors, see
Bass, 113 S.W.2d at 739, or how the information Apresents
an opportunity to obtain an advantage over competitors,@ Computer
Assocs., 918 S.W.2d at 455 (emphasis added).  After examining each discovery request and
Nehm=s
affidavit supporting DESA=s assertion of the trade secret
privilege, we conclude that DESA has established the applicability of trade
secret privilege to information regarding financial information and market
strategies, but not to information regarding customers and vendors or contract
terms.








Financial
information: Nehm=s
affidavit asserts that, should DESA=s
financial information be released to the public, its customers and vendors
could use the information to renegotiate their prices with DESA, and its
competitors could use the information to Aundercut
DESA in its pricing in an effort to obtain DESA=s
customers.@ 
We hold that these statements, while somewhat conclusory and lacking in
detail, are nevertheless sufficient to establish the competitive value of the
information to DESA=s pricing strategy.  See In re Cayman Island Firm of Deloitte
& Touche, No. 04-01-00491-CV, 2001 WL 1042233, at *4 (Tex. App.CSan
Antonio September 12, 2001, orig. proceeding) (not designated for publication)
(holding affiant=s statement that information was Ahighly
confidential and proprietary and would greatly benefit [relator=s]
competitors,@ while Asketchy@
on details, was sufficient to establish trade secret privilege).  Accordingly, DESA has carried its initial
burden of establishing that this information is a trade secret.  See Cont=l
Gen. Tire, 979 S.W.2d at 613.

Market
strategies: Nehm=s
affidavit asserts the same reasons for the value of market analyses,
assessments, and so forth prepared by DESA, claiming that public release of the
information would be Adetrimental@
and could assist its vendors and competitors in undercutting DESA=s
pricing.  Again, these statements
establish that the market analyses provide DESA with pricing strategies that,
if they were revealed to competitors, would cause DESA to lose its marketplace
advantage.  Therefore, we conclude that
DESA has carried its initial burden as to market strategies as well.  See id.








Customers
and vendors: In contrast to the statements in Nehm=s
affidavit regarding financial information and market strategies, the affidavit
does not address any competitive advantage provided by DESA=s
customer and vendor lists.  Instead, the
affidavit states merely that revealing the identity and contact information of
its customers and vendors Awould
put DESA=s
competitors in direct contact with DESA=s
customers (buyers) and vendors (manufacturers)@ and
that ADESA
spends many man hours in maintaining a good relationship with their customers
(buyers) and vendors (manufacturers).@  It does not state why the identity and
contact information is important to DESA or why the information gives it a
competitive advantage, and it does not state that revealing this information
would hurt its business or its relationships.[4]  For these reasons, we conclude that DESA did
not establish the applicability of trade secret privilege to the discovery
requests seeking customer and vendor information; therefore, the trial court
did not abuse its discretion by ordering the production of the requested
discovery relating to DESA=s
customers and vendors.








Contract
terms: For the same reason, we hold that DESA did not meet its burden of
showing that the terms of its contract with Lowe=s are
entitled to trade secret protection. 
Nehm=s affidavit states only that the
information is confidential and proprietary, not that it has competitive value
for the company.  While Nehm=s
affidavit states that the contract contains a confidentiality provision, this
establishes only the confidentiality of the informationCnot that
it is a trade secret.  Accordingly, we do
not find a clear abuse of discretion as to the trial court=s
compelling discovery of the terms of DESA=s
contract with Lowe=s.

B.     Did Heartland establish that the
information was necessary for a fair adjudication of its claims?

 








Because
DESA established the applicability of trade secret privilege to the financial
information and market strategies sought by Heartland, the burden shifted to
Heartland to show that disclosure of the information was necessary for a fair
adjudication of its claims.  See Cont=l Gen.
Tire, 979 S.W.2d at 613.  However,
the trial court had no evidence before it of Heartland=s need
for the information.  The trial court
merely had Heartland=s explanation, ATo show
that its claim for lost profits is not speculative, Heartland intends to show
the Court that DESA projected Heartland=s
profits and that DESA continues to sell the products to Lowe=s which
DESA promised to purchase from Heartland,@ and
Heartland=s unsupported contention that Athe
information is material and necessary to prove Heartland=s lost
profits and is unavailable from another source.@  Heartland=s motion
to compel provided no explanation as to why revealing DESA=s trade
secrets was necessary to proving its claims.[5]  See Cont=l Gen.
Tire, 979 S.W.2d at 615 (holding that, without evidence of necessity,
requesting party did not carry its burden for compelling disclosure of trade
secret).  Accordingly, we hold that the
trial court abused its discretion when it compelled production of DESA=s trade
secrets without a showing of necessity by Heartland.[6]  And because DESA has no adequate remedy by appeal,
mandamus relief is appropriate.  See
id. (holding that appeal was an inadequate remedy when requesting party
failed to establish necessity, yet the trial court nevertheless compelled
production of trade secrets) (citing Walker, 827 S.W.2d at 843).

CONCLUSION








Having concluded
that the trial court abused its discretion by compelling production of DESA=s trade secret
financial information and market strategies, we conditionally grant DESA=s petition for
writ of mandamus only to the extent that we order the trial court, in
accordance with this opinion, to vacate its February 21, 2006 order with
respect to numbers 9-13 of Heartland=s First
Request for Production and numbers 12-13, 17, and 21-22 of Heartland=s Notice
of Intent To Take the Oral/Videotaped Deposition Duces Tecum of a DESA
Corporate Representative.  A writ
will issue only if the trial court fails to do so.  In all other respects, DESA=s
petition for writ of mandamus is denied.

 

 

BOB MCCOY

JUSTICE

 

PANEL A: CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

 

DELIVERED: June 22, 2006








APPENDIX A

 

 

HEARTLAND=S FIRST REQUEST FOR
PRODUCTION:

 

REQUEST FOR PRODUCTION NO. 9:  Other than Heartland, produce all financial
information including copies of purchase orders, profit projections, payments
made to any mantel manufacturer selling products to DESA from April 2003 until
the present.

 

REQUEST FOR PRODUCTION NO. 10:   Produce all financial information showing
DESA=s gross profit from the
mantel business from its calendar business years for 2001 through the present.

 

REQUEST FOR PRODUCTION NO. 11:  Produce all financial information showing DESA=s net profit form the
mantel business from its calendar business years for 2001 through the present.

 

REQUEST FOR PRODUCTION NO. 12:  Produce any studies, analyses, assessments,
and/or forecasts by DESA for the mantel business for its calendar business
years from 2001 through the present.

 

REQUEST FOR PRODUCTION NO. 13:  Produce the revenues, earnings, profits,
losses, or billings relating to and/or derived form DESA=s mantel business from
its calendar business years for 2001 through the present.

 

 

HEARTLAND=S NOTICE OF INTENT TO
TAKE THE ORAL/VIDEOTAPED DEPOSITION DUCES TECUM OF A DESA CORPORATE
REPRESENTATIVE:

 

8.     The terms of DESA=s contract(s) with Lowe=s to purchase mantels
manufactured by Heartland, including the number of mantels to be supplied by
DESA to Lowe=s.

 

12.   Sales of mantels by DESA to buyers, such as
Lowe=s, since DESA
discontinued its relationship with Heartland, includes the gross amount of such
sales by year.

 

13.   The percentage of gross profit DESA has
derived from the mantel business in relation to its total gross profit for the
company for each year from 2001 to present.








14.   The purchase by DESA of mantels from all
suppliers after DESA discontinued purchasing from Heartland until present,
including the names, addresses, phone numbers and contact persons for the
suppliers and whether or not such supplier is an affiliate of DESA.

 

16.   Identify the buyers of mantels from DESA from
the beginning of Heartland=s relationship with DESA until the present time,
including DESA=s primary contact person
with each buyer.

 

17.   DESA=s gross sales in dollars of products, other than
mantels, to buyers which sales were obtained by DESA as a result of DESA=s sales of mantels
designed by Heartland (or modifications thereof) from 2001 to present.

 

21.   DESA=s gross and net profit from selling mantels for
each year form 2001 to present.

 

22.   Projections prepared by DESA for the mantel
business for each year from 2001 to present.

 

 

 











[1]See Tex. R. App. P.
47.4.





[2]Also see In re Bass, which approves the
following Restatement factors for evaluating a claim of trade secret privilege:


 

(1) the extent to which the information is known
outside of his business; (2) the extent to which it is known by employees and
others involved in his business; (3) the extent of the measures taken by him to
guard the secrecy of the information; (4) the value of the information to him
and to his competitors; (5) the amount of effort or money expended by him in
developing the information; (6) the ease or difficulty with which the
information could be properly acquired or duplicated by others.

 

113 S.W.3d at 739 (citing Restatement of Torts ' 757 cmt. B (1939)).





[3]The specific requests corresponding to the categories
are as follows: Financial information (requests for production numbers 9-11,
13; deposition notice numbers 12-13, 17, 21-22); market strategies (requests
for production numbers  9, 12; deposition
notice number 22); customers and vendors (deposition notice numbers 14, 16);
and contract terms (deposition notice number 8).  These discovery requests are reproduced at
Appendix A to this opinion.





[4]Cf. T-N-T Motorsports, Inc. v. Hennessey Motorsports,
Inc., 965 S.W.2d 18, 23 (Tex. App.CHouston
[1st Dist.] 1998, pet. dism=d) (holding that vendor list was a trade secret when
resisting party testified that Ait [had] taken him four years to compile a list of
vendors he considers capable of providing the materials and service he needs,
who have the best prices, and who are the most reliable@); Miller
Paper Co. v. Roberts Paper Co., 901 S.W.2d 593, 601-02 (Tex. App.CAmarillo
1995, no writ) (concluding that customer list was trade secret when evidence
showed that it had been compiled over a 52-year period and that it contained
contact information as well as customers= buying preferences, special billing information,
delivery sites, information regarding the need for purchase orders, and cash on
delivery data; witnesses also testified that the information Awould
provide competitors tremendous advantage@ and that Awith the data, one could easily start a new company@).  





[5]In this original proceeding, Heartland contends that
its expert=s testimony (which was not before the trial court)
establishes necessity because Athe information solicited will be used to supplement
his opinions concerning the amount of Heartland=s damages.@  To the
contrary, the expert did not state that he needed the information to formulate
his damages calculations; he merely said that, when asked if he planned to
supplement his report, A[i]t depends upon what other information comes to me
as a result of interrogatories and future depositions.@





[6]Specifically, the trial court abused its discretion by
ordering DESA to respond to numbers 9-13 of Heartland=s First
Request for Production and numbers 12-13, 17, and 21-22 of Heartland=s Notice
of Intent To Take the Oral/Videotaped Deposition Duces Tecum of a DESA
Corporate Representative.